Filed 10/14/20

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE, | F080131 |
| Plaintiff and Respondent, | (Kern Super. Ct. No. BF177632A) |
| v. | |
| JOSE ANTONIO HERNANDEZ, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kern County.  David R. Zulfa, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Sally Espinoza, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.

## INTRODUCTION

Appellant/defendant Jose Antonio Hernandez entered a plea negotiation in which he agreed to a term of 10 years in state prison. The 10-year term included the imposition of two prior prison term enhancements. In this appeal, he asserts the enhancements must be dismissed because of the subsequent enactment of Senate Bill No. 136 (2019–2020 Reg. Sess.) (Senate Bill 136) that amended Penal Code[1] section 667.5, subdivision (b) and, on remand, the prosecution may refile previously dismissed counts but he cannot be sentenced to more than the 10-year term that the prosecution agreed to as part of the plea agreement.

Based on the California Supreme Court's recent ruling in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*), we vacate the sentence and remand to the trial court to dismiss the prior prison term enhancements, and further hold the People may then either agree to modify the bargain to reflect the downward departure in the sentence, or choose to withdraw from the original plea agreement, and the court may choose to withdraw its prior approval of the plea agreement.

## FACTS[2]

On August 1, 2019, officers responded to a business on a dispatch that a person was brandishing a weapon at an employee. Upon arrival, an officer contacted Jaime Baez, a security guard at the business, while other officers located defendant. Defendant was in possession of a black folding knife and arrested.

Baez reported that he saw defendant loitering behind the business and told him to leave. Defendant became mad and said he was not going to leave because he was a paying customer. Defendant produced a knife, took steps toward Baez, and said he was going to stab him. Baez became fearful for his life and removed his firearm from his

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

[2] At the plea hearing, the parties stipulated to the police report as the factual basis for the plea. The facts are taken from the police report, as quoted in the probation report.

holster.  He gave several warnings to defendant and told him the police had been called and were on their way.  Defendant began to walk away and was apprehended when the officers arrived.

## PROCEDURAL BACKGROUND

On August 5, 2019, a complaint was filed in the Superior Court of Kern County that charged defendant with count 1, assault with a deadly weapon, a knife (Pen. Code, § 245, subd. (a)(1));[3] and count 2, criminal threats (§ 422) with an enhancement for personal use of a deadly weapon (§ 12022, subd. (b)(1)).

As to both counts, it was alleged defendant had two prior strike convictions; two prior serious felony enhancements (§ 667, subd. (a)); and four prior prison term enhancements (§ 667.5, subd. (b)).

**The plea hearing**

On August 15, 2019, the court was scheduled to conduct the preliminary hearing.  However, the parties advised the court they had reached a plea agreement.  The court stated the terms to defendant:

> "It has been indicated to me that you are going to plead guilty or no contest to Count 1, assault with a deadly weapon, which is a serious felony, you are going to admit you have two prior strike convictions and that you have served two prior terms in prison.  You would receive a total of ten years in the Department of Corrections.  And all remaining charges will be dismissed.  [¶] … [¶]  In order to reach this disposition I have agreed that I'm going to strike one of your two strike convictions, so your sentence would be doubled, so it would be a total of ten years."

Defendant agreed that the court correctly stated the terms of the plea agreement, and that he read, understood, and signed the waiver of rights form.

After being advised of and waiving his constitutional rights, defendant pleaded no contest to count 1, assault with a deadly weapon, and admitted the two prior strike convictions and two prior prison term enhancements.  The court granted the People's

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

motion to dismiss count 2 and the personal use enhancement, and the two additional prior prison term enhancements, on the condition the plea remains in full force and effect. The court referred the matter to the probation department.

**The sentencing hearing**

On September 13, 2019, the court conducted the sentencing hearing. The court dismissed the prior strike conviction pursuant to section 1385 and stated it would "go ahead and impose the ten years as previously indicated." Defendant was sentenced to the upper term of four years for count 1, doubled to eight years as the second strike sentence, plus two consecutive one-year terms for the prior prison term enhancements, consistent with the terms of the plea agreement.

The court ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)), suspended the $300 parole revocation fine (§ 1202.45), and ordered victim restitution in an amount to be determined (§ 1202.4, subd. (f)). The court also imposed a $40 court operations assessment fee (§ 1465.8) and a $30 criminal conviction assessment fee (Gov. Code, § 70373).

On October 16, 2019, defendant filed a timely notice of appeal, and the court granted his request for a certificate of probable cause.

## DISCUSSION

### I.      The Prior Prison Term Enhancements

Defendant's negotiated disposition was for a sentence of 10 years, which included two one-year terms for the section 667.5, subdivision (b) prior prison term enhancements. In the initial briefing on this case, defendant argued, and the People conceded, that the two one-year enhancements must be dismissed based on the subsequent enactment of Senate Bill 136 that amended section 667.5, subdivision (b). (Stats. 2019, ch. 590, § 1, eff. Jan. 1, 2020.)

After briefing was completed, the California Supreme Court's issued its ruling in *People v. Stamps, supra,* 9 Cal.5th 685. As we will discuss below, *Stamps* held that as a

4

result of Senate Bill 1393's amendments to section 667, subdivision (a) and section 1385, the trial court may now exercise its discretion to dismiss a prior serious felony enhancement, but the prosecution may also withdraw from a plea agreement if that enhancement was part of a specified sentence.  (2017–2018 Reg. Sess.)  (Stats. 2018, ch. 1013, §§ 1–2; Senate Bill 1393.)

After *Stamps* was decided, this court requested supplemental briefing from the parties as to the appropriate remedy once the prior prison term enhancements are stricken, and whether the prosecution could withdraw from the plea agreement.

Defendant argues the section 667.5, subdivision (b) enhancements must be stricken, the prosecution cannot withdraw from the plea agreement, and *Stamps* is distinguishable since the amendment in that case only granted the trial court discretion to decide whether to dismiss the prior serious felony enhancement, whereas Senate Bill 136 now mandates dismissal of the prior prison term enhancements.  Defendant states the prosecution may refile the dismissed charges, but the court cannot resentence him to any more than the 10-year term that was agreed to by the parties in the original negotiated disposition, as directed in *People v. Collins* (1978) 21 Cal.3d 208 (*Collins*).

The People counter that based on the rationale in *Stamps*, the district attorney may completely withdraw from the original plea agreement since there is no evidence the Legislature intended that Senate Bill 136's amendments to section 667.5, subdivision (b) permit the court to unilaterally change the terms of the plea agreement once the prior prison term enhancements are stricken.

As we will explain, we agree with the People's argument and are compelled to remand consistent with *Stamps*.

### A.     *Section 667.5 and Senate Bill 136*

At the time of defendant's plea and sentencing hearing, "section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and

5

had not remained free of custody for at least five years. [Citation.] Courts nevertheless had discretion to strike that enhancement pursuant to section 1385, subdivision (a). [Citation.] Effective as of January 1, 2020, Senate Bill No. 136 (Reg. Sess. 2019–2020) amends section 667.5, subdivision (b) to limit its prior prison term enhancement to only prior prison terms for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b). [Citations.]" (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681.) Senate Bill 136 applies retroactively to all defendants whose judgments were not yet final as of the statute's effective date. (*Id*. at pp. 681–682.)

Defendant contends, and the People concede, that his prior prison terms were not served for sexually violent offenses, and his admissions and the two one-year terms imposed must be stricken based on Senate Bill 136's amendments to section 667.5, subdivision (b).

### B. Plea Agreements and Changes in the Law

The disputed question is whether the required dismissal of the two consecutive one-year terms, that were imposed as part of the specified sentence of 10 years, has any effect on the underlying plea agreement that the parties entered into and that was approved by the court.

"We have held that when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citations.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)

There are different considerations in the case of plea agreements. "[T]he process of plea negotiation 'contemplates an agreement negotiated by the People and the defendant and approved by the court. [Citations.] … Judicial approval is an essential condition precedent to the effectiveness of the "bargain" worked out by the defense and prosecution. [Citations.]' " (*People v. Segura* (2008) 44 Cal.4th 921, 929–930 (*Segura*).)

6

"[O]nly the prosecutor is authorized to negotiate a plea agreement on behalf of the state. '[T]he court has no authority to substitute itself as the representative of the People in the negotiation process and under the guise of "plea bargaining" to "agree" to a disposition of the case over prosecutorial objection. Such judicial activity would contravene express statutory provisions requiring the prosecutor's consent to the proposed disposition, would detract from the judge's ability to remain detached and neutral in evaluating the voluntariness of the plea and the fairness of the bargain to society as well as to the defendant, and would present a substantial danger of unintentional coercion of defendants who may be intimidated by the judge's participation in the matter. [Citation.]' [Citations.]" (*Segura, supra*, 44 Cal.4th at p. 930.)

"Because a 'negotiated plea agreement is a form of contract,' it is interpreted according to general contract principles. [Citation.] Acceptance of the agreement binds the court and the parties to the agreement. [Citations.]" (*Segura, supra*, 44 Cal.4th at pp. 930–931.)

" 'Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly. [Citation.] Once the court has accepted the terms of the negotiated plea, "[it] lacks jurisdiction to alter the terms of a plea bargain so that it becomes more favorable to a defendant unless, of course, the parties agree." [Citation.]' [Citations.]" (*Segura, supra*, 44 Cal.4th at p. 931, fn. omitted.)

"[I]n the context of a negotiated plea the trial court may approve or reject the parties' agreement, but the court may not attempt to secure such a plea by stepping into the role of the prosecutor, *nor may the court effectively withdraw its approval by later modifying the terms of the agreement it had approved*." (*Segura, supra*, 44 Cal.4th at pp. 931–932, italics added.)

## C.    *Collins*

In a series of cases, the California Supreme Court has addressed the impact of amendments or repeals of statutes, either by the legislative or initiative process, that had provided for sentences that were part of a plea agreement for a specified sentence.

As noted above, defendant argues that remand in this case should be consistent with *People v. Collins, supra,* 21 Cal.3d 208, where the defendant was charged with 15 felony counts and several special allegations.  He pleaded guilty to oral copulation in violation of former section 288a, in exchange for dismissal of the remaining charges and allegations, pursuant to a plea agreement.  Prior to the sentencing hearing, the Legislature repealed former section 288a and decriminalized "the act of oral copulation between consenting, nonprisoner adults ...."  Nevertheless, the court sentenced the defendant to one to 15 years, the term previously prescribed for the repealed offense.  (*Id*. at pp. 211–212.)

*Collins* held the decriminalization of the offense applied retroactively under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) because the defendant's conviction was not yet final.  *Collins* further held the trial court improperly imposed the sentence previously mandated by the repealed statute "because the conduct which he admitted in pleading guilty was no longer punishable at the time of sentencing."  (*Collins, supra*, 21 Cal.3d at p. 212.)

*Collins* explained that on remand, the district attorney could reinstate the counts that had been dismissed as part of the plea agreement.  (*Collins, supra*, 21 Cal.3d at p. 214.)  Since the oral copulation offense had been decriminalized, the prosecution had been "deprived of the benefit of its bargain by the relief granted herein," and the People could restore the dismissed counts because "the state [was] substantially deprived of the benefits for which it agreed to enter the bargain."  (*Id*. at p. 215.)

> "[The] defendant seeks to gain relief from the sentence imposed but otherwise leave the plea bargain intact.  *This is bounty in excess of that to which he is entitled*.  The intervening act of the Legislature in

decriminalizing the conduct for which he was convicted justifies a reversal of defendant's conviction and a direction that his conduct may not support further criminal proceedings on that subject; but it also destroys a fundamental assumption underlying the plea bargain – that defendant would be vulnerable to a term of imprisonment. The state may therefore seek to reestablish defendant's vulnerability by reviving the counts dismissed.

"Under the circumstances posed herein, however, the defendant is also entitled to the benefit of his bargain. This is not a case in which the defendant has repudiated the bargain by attacking his guilty plea; *he attacks only the judgment, and does so on the basis of external events - the repeal and reenactment of section 288a – that have rendered the judgment insupportable*. This court has long recognized that the state has no interest in preserving erroneous judgments [citation] and that convictions should not rest on noncriminal conduct. *Here external events and not defendant's repudiation undermined this plea bargaining agreement*. Accordingly, we must fashion a remedy that restores to the state the benefits for which it bargained without depriving defendant of the bargain to which he remains entitled." (*Id*. at pp. 215–216, italics added, fns. omitted.)

*Collins* further held that on remand, the People could revive one or more of the dismissed counts, but the defendant could not receive a more severe punishment than the term which the plea agreement had subjected him. (*Collins*, *supra*, 21 Cal.3d at pp. 216–217.)

### D.    *Harris and Proposition 47*

The California Supreme Court again addressed this issue in *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*), where the defendant was charged with robbery. He pleaded guilty to felony grand theft (§ 487, subd. (c)) and admitted a prior conviction allegation pursuant to a plea agreement for a six-year prison term and dismissal of the robbery charge. After the judgment was final, Proposition 47 was enacted which reduced certain nonviolent crimes from felonies to misdemeanors, including defendant's grand theft conviction. Proposition 47 also added section 1170.18, that provided a mechanism for convicted felons to petition for relief. (*Harris*, at pp. 987–988.) Thereafter, the defendant filed a petition for recall under section 1170.18 to have the court recall and reclassify his felony conviction as a misdemeanor and resentence him as a misdemeanant.

9

The People argued the proposed resentencing would deprive both parties of the benefit of their bargain and moved to completely withdraw from the plea agreement and reinstate the dismissed robbery charge and prior felony conviction allegations. The trial court granted the defendant's petition for recall of sentence and reclassified the offense as a misdemeanor. However, the trial court also granted the People's motion to withdraw from the plea agreement and reinstate the dismissed charges. (*Harris*, at pp. 987–988.)

*Harris* held the People were not entitled to rescind the plea agreement when the court reclassified his felony conviction to a misdemeanor. (*Harris*, *supra*, 1 Cal.5th at p. 987.) In reaching this decision, *Harris* focused on the intent behind the enactment of Proposition 47 and section 1170.18:

> "[E]ntering into a plea agreement does not insulate the parties 'from changes in the law that *the Legislature has intended to apply to them*.' (Italics added.) Here, of course, it was not the Legislature, but the electorate, that enacted Proposition 47. So the question is whether the electorate intended the change to apply to the parties to this plea agreement. We conclude it did." (*Harris*, at p. 991.)

*Harris* found section 1170.18, subdivision (a) specifically applied to a person " 'serving a sentence for a conviction, *whether by trial or plea*,' " and concluded that "[b]y expressly mentioning convictions by plea, Proposition 47 contemplated relief to all eligible defendants." (*Harris*, *supra*, 1 Cal.5th at p. 991.) "The electorate may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement. The electorate did so when it enacted Proposition 47." (*Id*. at p. 992.)

> "The resentencing process that Proposition 47 established would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner. Many criminal cases are resolved by negotiated plea…. Nothing in Proposition 47 suggests an intent to disrupt this process. [¶] One of Proposition 47's primary purposes is to reduce the number of nonviolent offenders in state prisons, thereby saving money and focusing prison on offenders considered

10

more serious under the terms of the initiative. [Citations.] Accepting the People's position would be at odds with that purpose…." (*Ibid*.)

*Harris* acknowledged that *Collins* allowed the People to reinstate certain charges that had been dismissed because of the plea agreement in that case, with certain limitations, but found *Collins* "distinguishable both substantively and procedurally" since the legal change in *Collins* "decriminalized the offense to which the defendant had pled" and "*eviscerated* the judgment and the underlying plea entirely, and it did so before the judgment. That is not the case here." (*Harris, supra*, 1 Cal.5th at p. 993, italics added.)

### E.     *Stamps and Senate Bill 1393*

In *Stamps*, *supra*, 9 Cal.5th 685, the defendant entered into a plea agreement for a specified term of nine years, pleaded no contest to one count of first degree burglary, and admitted a prior strike and a section 667, subdivision (a) serious felony enhancement. The court granted the People's motion to dismiss the other charges and allegations and sentenced him to the specified term of nine years based on the second strike term of four years for burglary, plus five years for the section 667, subdivision (a) prior serious felony enhancement. (*Stamps, supra*, 9 Cal.5th at p. 693.)

At the time of sentencing in *Stamps*, the trial court did not have discretion to strike the five-year term for the section 667, subdivision (a) prior serious felony enhancement, and it was required to impose the term. (*Stamps, supra*, 9 Cal.5th at p. 693.) While the defendant's appeal was pending, Senate Bill 1393 took effect and amended section 667, subdivision (a) and section 1385, that gave trial courts the discretion to decide whether to dismiss the prior serious felony enhancement. On appeal, the defendant argued amendments were retroactive to his case, a certificate of probable cause was not required to raise the issue, and the matter should be remanded for the court to decide whether to strike the five-year prior serious felony enhancement term under the amended statutes "while otherwise maintaining the plea agreement intact." (*Id*. at pp. 693, 700.)

*Stamps* held Senate Bill 1393's amendments to section 667, subdivision (a) and section 1385 were retroactive to cases not yet final pursuant to *Estrada*, and a certificate

11

of probable cause was not required for the defendant to seek appellate relief. (*Stamps*, *supra*, 9 Cal.5th at pp. 695–699.)

As for the appropriate remedy, *Stamps* held the trial court and the prosecution were not bound by the terms of the original plea agreement if, on remand, the trial court decided to dismiss the prior serious felony enhancement that the defendant admitted as part of the plea agreement. (*Stamps, supra*, 9 Cal.5th at p. 699.)[4]

> "If defendant stood convicted of a crime with an enhancing prior as a result of trial or an open plea of guilty as charged, his case could be remanded for the court to reconsider its sentence in light of its newly conferred authority to strike the enhancement. This case is procedurally different because both parties entered a plea agreement for a specific prison term. [¶] Even when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike *in contravention of a plea bargain for a specified term*." (*Id*. at p. 700, italics added.)

Since the defendant entered into the plea agreement for a specified prison term, the trial court could not modify the terms of that bargain by dismissing the five-year prior serious felony enhancement without the agreement of both parties. (*Stamps, supra*, 9 Cal.5th at pp. 700–701.) The crux of the case was that the trial court could dismiss the enhancement while leaving the plea agreement intact only if "the Legislature intended to

---

[4] As explained above, a sentencing court was previously required to impose the five-year term for the section 667, subdivision (a) prior serious felony enhancement, and did not have discretion to dismiss it. After the enactment of Senate Bill 1393, sections 667 and 1385 were amended to provide sentencing courts with discretion to dismiss the enhancement. (§§ 667, subd. (a)(1), 1385, subd. (b), as amended by Stats. 2018, ch. 1013, §§ 1, 2.) As a result, remand has generally been required where the court proceeded with sentencing on the erroneous assumption it lacked discretion to dismiss the five-year term. (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) However, if a record shows the sentencing court would not have exercised its discretion, then remand for the court to consider whether to dismiss the section 667, subdivision (a) enhancement would be an idle act and is not required. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; *People v. Jones* (2019) 32 Cal.App.5th 267, 274.)

In contrast, the amendment to section 667.5, subdivision (b) does not vest the court with any discretion, but instead mandates dismissal of the prior prison term enhancement if the underlying felony conviction is not a sexually violent offense. (*People v. Jennings, supra,* 42 Cal.App.5th at p. 681.)

overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385. We are not persuaded that the Legislature intended this result." (*Id*. at p. 701.)

*Stamps* examined the legislative intent behind Senate Bill 1393 and found no evidence the Legislature intended the amendments to permit the court to unilaterally restructure a plea in the absence of the prosecution's agreement. (*Stamps*, *supra*, 9 Cal.5th at pp. 702–704.)

> "The Legislature may have intended to modify the sentencing scheme, but the legislative history does *not* demonstrate any intent to overturn existing law regarding a court's lack of authority to unilaterally modify a plea agreement. Indeed, none of the legislative history materials mention plea agreements *at all*. What legislative intent can be discerned runs counter to defendant's position. As described, Senate Bill 1393 was intended to bring a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements. Thus, the Legislature gave a court the same discretion to strike a serious felony enhancement that it retains to strike any other sentence enhancing provision. Its action did not operate to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Id*. at p. 702.)

*Stamps* distinguished the intent behind Senate Bill 1393's amendments to section 667, subdivision (b), from *Harris*'s discussion about the impact of Proposition 47 on plea agreements. (*Stamps*, *supra*, 5 Cal.5th at p. 704.)

> "The [resentencing] provision [of Proposition 47] … allowed defendants who had already completed their sentences to have their offenses designated as misdemeanors. [Citation.] The electorate thus evinced an intent that these offenses be treated as misdemeanors *no matter how or when a defendant suffered the conviction*. As *Harris* reasoned, to allow the prosecution, in response to a successful resentencing petition, to withdraw from a plea agreement and reinstate dismissed charges would frustrate electoral intent to treat these offenses uniformly as misdemeanors, essentially denying meaningful relief to those convicted through plea bargains. [Citation.]
>
> "Similar considerations do not apply here. Nothing in the language and legislative history of Senate Bill 1393 suggests an intent to modify

13

section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties. As discussed, Senate Bill 1393's amendment of section 1385 now allows a trial court to strike a serious felony enhancement just as it may do with any other enhancement. Unlike in *Harris*, the remedy defendant seeks, to allow the court to strike the serious felony enhancement but otherwise retain the plea bargain, would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue, by granting the court a power it would otherwise lack for any other enhancement. *That Senate Bill 1393 is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements*." (*Ibid*., italics added.)

*Stamps* thus concluded Senate Bill 1393 was not intended "to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification," and the defendant could not " ' "whittle down the sentence 'but otherwise leave the plea bargain intact.' " ' " (*Stamps supra*, 9 Cal.5th at pp. 702, 706.)

*Stamps* set forth the following procedures on remand. Defendant would have the opportunity to request the trial court to decide whether to exercise its newly granted discretion to dismiss the five-year prior serious felony enhancement. If the court declined to exercise its discretion, "that ends the matter and defendant's sentence stands." (*Stamps*, *supra*, 9 Cal.5th 707.) If the court dismissed the enhancement, "such a determination would have consequences to the plea agreement. For the reasons discussed *ante*, *the court is not authorized to unilaterally modify the plea agreement by striking the serious felony enhancement but otherwise keeping the remainder of the bargain*. If the court indicates an inclination to exercise its discretion under section 1385, the prosecution may, of course, agree to modify the bargain to reflect the downward departure in the sentence such exercise would entail. Barring such a modification agreement, 'the prosecutor is entitled to the same remedy as the defendant – withdrawal of assent to the plea agreement ....' [Citation.] [¶] Further, the court may withdraw its prior approval of the plea agreement." (*Id*. at pp. 707–708, italics added.)

14

### F.    *Barton and Senate Bill 180*

This court recently addressed a similar issue in *People v. Barton* (2020) 52 Cal.App.5th 1145, petition for review pending, petition filed September 4, 2020, S264285 (*Barton*), where the defendant pleaded guilty to two narcotics offenses, admitted she had two prior drug-related convictions pursuant to the former section 11370.2, subdivision (c) enhancement, and waived her appellate rights pursuant to a negotiated disposition.  The People moved to dismiss the charges and agreed to a stipulated term of eight years eight months, that included two three-year terms for the former section 11370.2, subdivision (c) enhancements.  (*Barton*, at p. 1149.)

While the defendant's appeal was pending, Senate Bill No. 180 (2017–2018 Reg. Sess.) (Senate Bill 180) went into effect and amended former section 11370.2 by eliminating the three-year enhancements for most drug-related prior convictions. (Stats. 2017, ch. 677, § 1.)  On appeal, the defendant argued she was entitled to the benefit of Senate Bill 180's amendments since her case was not yet final on appeal. (*Barton, supra*, 52 Cal.App.5th at p. 1149.)

*Barton* held that the defendant could raise the application of Senate Bill 180's amendments to her case even though she had waived her appellate rights because of the enactment of section 1016.8, which rendered any waivers of future benefits of legislative enactments that may retroactively apply void as against public policy.  *Barton* further held that Senate Bill 180's amendments were retroactive pursuant to *Estrada* and invalidated the two enhancements that were imposed as part of defendant's plea agreement.  (*Barton, supra*, 52 Cal.App.5th at pp. 1149–1150.)

As for the remedy, the defendant argued the enhancements must be vacated because of the amendments and the rest of the plea agreement must remain intact.  The People replied that once the invalid enhancements were stricken, the trial court could impose any punishment allowable for the crimes to which the defendant pleaded guilty. (*Barton, supra,* 52 Cal.App.5th at pp. 1149–1150, 1154–1155.)

15

*Barton* rejected the remedies proposed by both parties because they contemplated "unilateral changes to a material term of the plea agreement" that was prohibited in *Stamps*. (*Barton, supra*, 52 Cal.App.5th at p. 1150.) "The parties' plea agreement is now unenforceable because Senate Bill 180 invalidated the enhancements upon which nearly 70 percent of the stipulated sentence is based. [Citation.] 'Even if a defendant, the prosecutor and the court agree on a sentence, the court cannot give effect to it if it is not authorized by law. [Citation.] Thus, this is not the kind of situation which would entitle defendant to specific performance of the plea bargain [citations].' [Citations.]" (*Id.* at pp. 1155–1156.)

As in *Stamps*, *Barton* held the defendant's proposal to dismiss the enhancements and leave the plea bargain intact depended on whether "the Legislature intended for Senate Bill 180 to override the strictures of … section 1192.5. The legislative history discloses no such intent." (*Barton*, *supra*, 52 Cal.App.5th at p. 1150.)

> " 'According to that legislative history, the "sentence enhancement for prior drug convictions" was an "extreme punishment" that had "failed to" achieve its goals – "protect[ing] communities [and] reduc[ing] the availability of drugs" – while having the following negative effects: (1) producing "overcrowded jails and prisons"; (2) " 'funneling money away from community-based programs and services' " in order to " 'build[ ] new jails to imprison more people with long sentences,' " thus "crippl[ing] state and local budgets"; and (3) " 'devastat[ing] low-income communities of color' " and " 'target[ing] the poorest and most marginalized people in our communities.' " [Citation.] Repeal of the enhancement was therefore " 'urgently needed' " in order " 'to undo the damage' " the enhancement had caused, to "free[]" up funds for "reinvest[ment] in community programs that actually improve the quality of life and reduce crime," and to " 'reduce racial disparities in the criminal justice system.' " ' [Citation.]" (*Id.* at pp. 1158–1159.)

*Barton* held "[t]he fact Senate Bill 180 'is silent regarding pleas and provides no express mechanism for relief undercuts any suggestion that the Legislature intended to create special rules for plea cases' involving prior conviction enhancements under former section 11370.2. [Citation.] Therefore, on remand, the parties and the trial court must

abide by … section 1192.5," and the trial court cannot unilaterally modify the plea agreement by reducing the aggregate sentence. (*Barton*, *supra*, 52 Cal.App.5th at p. 1159.)

*Barton* concluded that on remand, the parties could modify the plea agreement to eliminate the invalid enhancements, "which would be the functional equivalent of having the trial court strike the enhancements, but the court is not obligated to approve the agreement as so modified. The parties can also renegotiate the agreement, subject to the trial court's approval, or they can proceed to trial on reinstated charges." (*Barton*, *supra*, 52 Cal.App.5th at pp. 1150, 1159.)

### G. Analysis

We are bound by the analysis in *Stamps* and *Harris* and agree with the rationale set forth in *Barton*. The two prior prison term enhancements imposed in this case have been rendered invalid after the enactment of Senate Bill 136 and must be stricken. However, the two enhancements were integral to the plea agreement and the specified sentence of 10 years. Defendant's proposed remedy to strike the enhancements, and allow the prosecution to refile the previously-dismissed charges as long as he is sentenced to no more than 10 years as specified in the original plea agreement, would result in the court making "unilateral changes to a material term of the plea agreement" without the consent of the prosecution. (*Barton, supra*, 52 Cal.App.5th at p. 1150.)

Defendant argues that *Stamps* is inapplicable to this case because Senate Bill 136 now mandates the dismissal of the prior prison term enhancements, while the amendment in *Stamps* only allowed the trial court to decide whether to exercise its discretion to dismiss the prior serious felony enhancement. Such a distinction is not the dispositive issue in this case. Instead, both *Stamps* and *Harris* focused on the history of the amendments to determine whether there was any intent to "to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the

17

modification" to determine whether the district attorney can withdraw from the plea agreement.  (*Stamps, supra*, 9 Cal.5th at p. 702; *Harris, supra*, 1 Cal.5th at p. 992.)

The scope of the trial court's authority on remand thus depends on whether the Legislature intended for Senate Bill 136's amendments to section 667.5, subdivision (b) to allow the trial court to unilaterally modify the plea agreement once the prior prison term enhancements are stricken.

> "Senate Bill 136 repeals a costly and ineffective 1-year sentence enhancement that is applied to current sentences for each prior felony jail or prison term served.  This 1-year enhancement re-punishes people for previous jail or prison time served instead of the actual crime when convicted of a non-violent felony.  By ignoring the actual offense committed, this enhancement exacerbates existing racial and socio-economic disparities in our criminal justice system.

> "Additionally, wide-spread research refutes the underlying premise that arbitrary enhancements increase public safety or deter future crime. Instead, evidence shows that longer and overly-punitive sentences are extremely expensive and increase the chances that someone will reoffend. Given that this 1-year enhancement is commonly used, the Department of Finance projects that repealing this single enhancement will save California taxpayers tens of millions dollars each year. It will also keep families together, redirect funds to evidence-based rehabilitation and reintegration programs, and move California away from our failed mass incarceration policies. This 1-year enhancement does apply to repeat violent offenders and leaves in place the discretion that prosecutors and judges need to treat a repeat offender more harshly than a first time offender. Amendments made in the Assembly exclude sexual predators so that these offenders are still subject to this 1-year enhancement."  (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 136 (2019–2020 Reg. Sess.) Sept. 13, 2019, pp. 2–3.)

As in *Stamps* and *Barton*, there is no evidence the Legislature intended Senate Bill 136 to permit the trial court to unilaterally modify a plea agreement once the prior prison term enhancements are stricken.  *Stamps* found the legislative history of Senate Bill 1393 showed it was intended to bring "a court's discretion to strike a five-year serious felony enhancement in line with the court's general discretion to strike other enhancements" and there was no evidence the Legislature intended to modify the court's

ability to unilaterally alter a plea agreement. (*Stamps*, *supra*, 9 Cal.5th at p. 702.) *Barton* concluded the legislative intent behind Senate Bill 180 was silent regarding pleas, and instead stated the prior drug-related conviction enhancement was an extreme punishment, failed to achieve its goals, and resulted in the negative effects of overcrowding jails, taking money away from the community to build more jails, and devastated low-income and poor communities, and the amendments were needed to instead allow reinvestment in the community to reduce crime and racial disparities. (*Barton, supra*, 52 Cal.App.5th at pp. 1158–1159.)

The legislative intent for the enactment of Senate Bill 136 is very similar to the intents discussed in *Stamps* and *Barton* – the amendment repealed an enhancement the Legislature deemed was costly and ineffective, exacerbated existing racial and socioeconomic disparities in the criminal justice system, and it did not deter future crime or increase public safety; in addition, the increased terms were characterized as extremely expensive, and eliminating the enhancement would save millions of dollars, keep families together, and maintain the court's ability to impose the enhancement for sexual predators. (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 136, *supra*, p. 3.)

In contrast to *Harris*'s analysis of Proposition 47 and section 1170.18, Senate Bill 136 is silent regarding pleas and provides no express mechanism for relief, and thus refutes any suggestion the Legislation intended to create special rules for the court to unilaterally modify the plea agreement once the enhancements are stricken. (*Barton, supra*, 52 Cal.App.5th at p. 1159.)

We thus conclude that, as in *Stamps* and *Barton*, the court must dismiss the two prior prison term enhancements that were an integral part of defendant's specified sentence, it cannot unilaterally modify the plea agreement by keeping the remainder of the bargain intact, and the People may withdraw from the plea agreement.

19

In reaching this conclusion, we acknowledge the holding in *Collins* that allowed the prosecution to refile the previously dismissed charges as long as the defendant was not resentenced to a greater term than provided in the original plea agreement. *Stamps* did not extend *Collins* to permit such a resolution, and instead held the People could completely withdraw from the plea agreement if the prior serious felony enhancement was dismissed.

We also note that a different result was reached in *People v. Matthews* (2020) 47 Cal.App.5th 857 (*Matthews*), about the impact of Senate Bill 136 on plea agreements – a case that was decided before *Stamps*. The defendant in *Matthews* pleaded guilty to felony grand theft with a prior strike conviction and admitted four prior prison term enhancements, pursuant to a plea agreement for a specific sentence of 10 years. While the defendant's appeal was pending, Senate Bill 136 was enacted. *Matthews* agreed with the defendant's argument that amendment was retroactive and the defendant's prior prison term enhancements must be stricken. (*Matthews, supra*, at pp. 861–862.)

*Matthews* also agreed with the defendant that the trial court could strike the prior prison term enhancements and leave the rest of stipulated sentence and plea agreement intact. (*Matthews, supra*, 47 Cal.App.5th at p. 866–868.) In reaching this conclusion, *Matthews* reviewed the same legislative materials regarding Senate Bill 136 that we have quoted above, found the intent was to save millions of dollars and keep families together, and concluded that intent "would be frustrated if the trial court were allowed to unilaterally alter agreed-to terms of a plea agreement after striking enhancement sentences as required by Senate Bill No. 136" because such benefits "would not be fully realized if the trial courts and the People could abandon a plea agreement whenever a defendant seeks retroactively to obtain elimination of an enhancement invalidated by Senate Bill No. 136 …." (*Matthews*, at pp. 868, 869.)

We disagree with *Matthews* because it runs counter to *Stamps* and is not supported by *Harris*. As noted above, the legislative intent for Senate Bill 136 is virtually identical

20

to the intents subsequently discussed in *Stamps* and *Barton* that supported the enactments of Senate Bills 1393 and 180, and failed to address the critical issue: whether the amendments were intended "to change well-settled law that a court lacks discretion to modify a plea agreement unless the parties agree to the modification." (*Stamps supra*, 9 Cal.5th at p. 702; *Harris, supra*, 1 Cal.5th at p. 992.)

We thus conclude that, on remand, the trial court must dismiss the prior prison term enhancements. "[T]he prosecution may, of course, agree to modify the bargain to reflect the downward departure in the sentence such exercise would entail. Barring such a modification agreement, 'the prosecutor is entitled to the same remedy as the defendant – withdrawal of assent to the plea agreement ....' [Citation.] [¶] Further, the court may withdraw its prior approval of the plea agreement." (*Stamps*, *supra* 9 Cal.5th at pp. 707–708.)

## II. The Restitution Fine and Fees*

Defendant relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 and argues the court violated his due process rights because it imposed a restitution fine and other fees at the sentencing hearing on his plea agreement without determining whether he had the ability to pay these amounts. Defendant asserts the order imposing the fine and fees must be stayed and the matter remanded for the court to determine his ability to pay.[5]

We decline to address the merits of these arguments because we are remanding the matter for the court to address the impact of dismissing the prior prison term enhancements on the plea agreement and defendant's sentence, which could result in the district attorney's withdrawal of the plea agreement.

---

\* See footnote, *ante*, page 1.

[5] The California Supreme Court is currently considering whether trial courts must consider a defendant's ability to pay before imposing or executing fines, fees, and assessments; and if so, which party bears the applicable burden of proof. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94–98, review granted Nov. 13, 2019, S257844.)

For guidance on remand, we have explained in *People v. Aviles* (2019) 39 Cal.App.5th 1055, that we believe *Dueñas* was wrongly decided and an Eighth Amendment analysis is more appropriate to determine whether restitution fines, fees, and assessments in a particular case are grossly disproportionate and thus excessive.  (*Aviles*, at pp. 1068–1072.)  We further note that even if *Dueñas* applied, a defendant's failure to object to the statutory minimum restitution fine of $300 does not waive the issue (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154), but any error arising from a court's failure to make an ability to pay finding may be harmless beyond a reasonable doubt under the circumstances.  (*People v. Jones* (2019) 36 Cal.App.5th 1028, 1030–1031; *Aviles,* at pp. 1075–1077.)

## DISPOSITION

The judgment is reversed and remanded to the superior court with directions to strike defendant's admissions and the two consecutive one-year terms imposed for the section 667.5, subdivision (b) prior prison term enhancements, and for further appropriate proceedings consistent with *People v. Stamps, supra*, 9 Cal.5th 685.


POOCHIGIAN, J.

WE CONCUR:


LEVY, Acting P.J.


DETJEN, J.