Filed 5/9/22  P. v. Valdez CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B317214 |
| Plaintiff and Respondent, | Kern County |
| v. | Super. Ct. No. SF019418 |
| JAIME VALDEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Kern County, Craig Phillips, Judge. Affirmed, modified in part.

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Catherine Chatman and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted defendant and appellant Jaime Valdez of one count of assault with a deadly weapon and one count of robbery. The trial court sentenced him to 63 years to life in state prison. On appeal, he raises three arguments: (1) the trial court abused its discretion in denying the defense's request to sever trial of the two charges; (2) the court abused its discretion in denying his *Romero*[1] motion; and (3) the minute order of sentencing and abstract of judgment must be corrected to accurately reflect his presentence conduct credit. We agree with Valdez's third contention and order the record corrected. In all other respects, the judgment is affirmed.

# PROCEDURAL BACKGROUND

The Kern County District Attorney filed an information charging Valdez with assault with a deadly weapon (a knife) (Pen. Code,[2] § 245, subd. (a)(1); count one), robbery (§ 211; count two), and misdemeanor resisting, delaying, or obstructing a peace officer and/or emergency medical technician (§ 148, subd. (a)(1); count three). With respect to count one, the information alleged Valdez inflicted great bodily injury. (§ 12022.7, subd. (a).) With respect to count two, it alleged he personally used a deadly or dangerous weapon (a knife). (§ 12022, subd. (b)(1).) It additionally alleged Valdez sustained the following prior convictions: (1) two strike priors (§§ 667, subds. (a)-(e), 1170.12); (2) two serious

---

1       *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

2       All further undesignated statutory references are to the Penal Code.

felony priors (§ 667, subd. (a)); and (3) five prison prior convictions (§ 667.5, subd. (b)).

Valdez pled no contest to count three. A jury found him guilty on the remaining counts. It found the personal infliction of great bodily injury allegation attached to count one true, but found not true the personal use of a deadly weapon allegation attached to count two. In a bifurcated trial, the court found the prior strike and serious felony allegations true.[3]

The court sentenced Valdez to 63 years to life in state prison. On count one, the court imposed a term of 25 years to life, plus a consecutive three-year term for the great bodily injury enhancement, and two consecutive five-year terms for the prior serious felony allegations. On count two, the court imposed a consecutive term of 25 years to life, but exercised its discretion to strike the prior serious felony enhancements. On count three, the court imposed 180 days in county jail, deemed time served. The court awarded Valdez 281 days custody credits, as well as 15 percent presentence conduct credits.[4]

Valdez timely appealed. On December 20, 2021, the Supreme Court ordered the case transferred from the Fifth Appellate District to the Second Appellate District.

---

3    The court found the prior prison term allegations not true in light of the recent repeal of that enhancement.

4    As discussed in greater detail below, the court's minute order and abstract of judgment do not reflect the conduct credits orally awarded.

# FACTUAL BACKGROUND

## A. Stabbing of Heriberto Marin Zuniga

Between 6:00 a.m. and 7:00 a.m. on December 4, 2018, Heriberto Marin Zuniga (Marin) was sleeping in his van at a homeless encampment near Lost Hills. As he was sleeping, he heard the driver door open and suddenly felt two "blows" landing on his body. These blows turned out to be stabs from a knife. Marin looked up and saw his attacker, hunched over between the van's two front seats, holding a knife with a four-and-a-half to five-inch blade. Marin immediately recognized Valdez as the man stabbing him. Valdez stabbed him once near his left ribs and once in the arm.

Valdez had spoken with Marin in his van earlier in the morning before he stabbed him. Valdez asked Marin how he was doing and if he lived in the van. He told Marin he felt sorry for how he was living. Before this conversation and the subsequent stabbing, Marin had encountered Valdez several times at the store and in the street.

Valdez had a distinctive tattoo on the right side of his face, which Marin recognized during the stabbing. Marin explained that he had not noticed other details specific to Valdez because he was not very awake, and was injured and afraid. For example, he did not recall seeing any tattoos on Valdez's hands.

After stabbing Marin, Valdez walked away from the scene. Marin left the van and went to a neighbor for help. The neighbor called 911, and an ambulance arrived to take Marin to a hospital.

Police later followed up with Marin. He described his assailant as having a distinctive tattoo on the right side of his face. He also told the police the attacker was a bit older, wore a blue shirt, and wore a brown sweatshirt with a hood over his

4

head.[5] Although the police did not ask Marin about the attacker's facial hair, he recalled in court that the man had a chin beard and moustache, consistent with Valdez's facial hair. Police showed Marin a photo lineup, and he identified Valdez as the person who stabbed him.[6] Marin told the police that Valdez had accused Marin of robbing him several months prior to the stabbing.

## B. Robbery at Lalo's Market

Around 7:00 a.m. on the same morning as Marin's stabbing, Eneida Luviano Garcia (Luviano) was checking the prior day's receipts at Lalo's Carniceria, a store she owned and operated. She saw Valdez pull up to the store in a dark blue car. Valdez walked into the store and told Luviano he needed change. When Luviano opened the register, Valdez grabbed her by the hair and neck, pulled her close, demanded money, and stuck something pointy into the side of her chest. She believed the pointy object was a knife, though she was not able to see what it was. As soon as she felt the pointy sensation in her chest, she fainted.

At the same time, Stephen Burt, a milk deliveryman, was pulling up to Lalo's. He noticed a green car with its driver's side door open. He walked into the store and saw Valdez leaning over the counter. Valdez had money in his hands. When Valdez took a

5     It is unclear whether Marin's recollection that the attacker wore a blue shirt and brown sweatshirt was an inconsistent description or whether the attacker wore both items of clothing together.

6     Only two of the six men in the lineup had face tattoos, one of whom was Valdez.

step toward Burt, Burt stepped back and raised his hands. Valdez fled out the door.

After Valdez left, Burt called out for Luviano. He found her lying on the floor behind the counter and called 911. Luviano later discovered that between $400 and $500 was missing from the cash register.

When police arrived, Luviano described her attacker as Hispanic, having a tattoo on his forehead, with no hair on his head but "some scruff." She recognized Valdez from prior encounters earlier that year. In total, she had encountered him more than 10 times over the 6 months leading up to the robbery. Police showed her a photo lineup, and she identified Valdez as the robber. The encampment where Marin lived was approximately a five-minute drive (two miles) from Lalo's.[7]

## C. Valdez's Resisting Arrest Charge

On December 7, 2018, Deputy Sheriff Aaron Mendez located Valdez walking along Highway 46, approximately one mile east of Interstate 5. Deputy Mendez got out of his vehicle to detain Valdez, but Valdez walked into a field. Deputy Mendez followed Valdez for about two miles, ordering him to stop, but Valdez did not comply. Eventually Valdez was detained by other deputies.

---

[7] Burt likewise identified Valdez as the man he saw leaning over the counter. Luviano acknowledged during cross-examination that she had carpooled with Marin to court. She testified that the two had not discussed any of the events of December 4, 2018.

## DISCUSSION

### I. The Trial Court Did Not Err in Denying the Defense's Motion to Sever

Valdez first contends the trial court abused its discretion and violated principles of due process by denying the defense's request to sever trial of the assault and robbery charges. For the reasons discussed below, we conclude the trial court did not err in denying the defense's motion to sever.

#### A. Relevant Proceedings

During motions in limine, Valdez's attorney moved to sever the two felony charges. Before hearing argument, the trial court stated its tentative ruling was to deny the motion. The court explained: "I don't see that having these together shows any problem in terms of prejudice to Mr. Valdez in either direction. They're both going to be ID type defenses. And I don't see th[at] one is going to spill onto the other for purposes of identifying him[.]"

Defense counsel asked the court to reconsider its tentative ruling. Counsel argued the identification evidence with respect to one charge was stronger than the other. She expressed concern that the jury would combine the identification evidence from both charges. She also argued that trying two serious or violent offenses, with two different victims, in the same case created a risk that the jury would use the joined charges as evidence of Valdez's poor character.

In response, the prosecution argued the identity evidence for both charges was strong, noting that both victims were able to identify Valdez from a photo lineup. He further noted that section 954 articulates a preference for joinder of charges.

The trial court stood by its tentative ruling. It explained:

"Well, when I made the ruling I hadn't had an opportunity to meet Mr. Valdez. [¶] Mr. Valdez, no offense, you got a real distinctive tattoo over one eye, so the ID issue is not one that is going to be very successful because of that because you're easily described. If you didn't have that tattoo, you know, bald guy, but when you got a tattoo on your face like that the ID become somewhat simple, describing somebody['s] facial features is difficult. When you got the tattoo it's not . . . ."

Defense counsel responded that only two of the six individuals in the photo lineup had face tattoos, and the other individual's face tattoo was dissimilar to Valdez's. The court was not persuaded, reemphasizing the distinctive nature of Valdez's tattoo:

"It becomes really a question of how distinctive . . . it is in terms of picking somebody out and unfortunately for Mr. Valdez it's distinctive. So I don't think it's going to be anything that the jury is going to want to lean one way or the other, so I don't find it's a reason to severe [sic] it. It's not going to make that impact on the case, so based on that I will stay with my position to deny to severe [sic]."

## B. Applicable Legal Principles

Section 954 provides: "An accusatory pleading may charge . . . two or more different offenses of the same class of crimes or offenses, under separate counts, . . . provided, that the court in which a case is triable, in the interests of justice and for

8

good cause shown, may in its discretion order that the different offenses or counts . . . be tried separately . . . ." Joinder is preferred over severance because it promotes efficiency. (*People v. Westerfield* (2019) 6 Cal.5th 632, 689 (*Westerfield*).) "Nonetheless, a trial court has discretion to sever properly joined charges in the interest of justice and for good cause. [Citations.]" (*People v. Simon* (2016) 1 Cal.5th 98, 122.)

"'When exercising its discretion, the court must balance the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial.' [Citation.]" (*Westerfield*, *supra*, 6 Cal.5th at p. 689.) "To successfully claim that the trial court abused its discretion in denying a motion to sever, a ""defendant must make a clear showing of prejudice"" by demonstrating that the denial 'exceeded the bounds of reason.' [Citation.]" (*Ibid.*) "An appellate court evaluates such claims in light of the showings made and the facts known by the trial court at the time of the court's ruling. [Citations.]" (*People v. Merriman* (2014) 60 Cal.4th 1, 37-38 (*Merriman*).) ""'[A] party seeking severance must make a *stronger* showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial" . . .' [Citations.]" (*Westerfield*, *supra*, 6 Cal.5th at p. 689, italics in original.)

"'In determining whether a trial court's refusal to sever charges [in a noncapital case] amounts to an abuse of discretion, we consider [three] factors: (1) whether evidence of the crimes to be jointly tried is cross-admissible; (2) whether some charges are unusually likely to inflame the jury against the defendant; [and] (3) whether a weak case has been joined with a stronger case so that the spillover effect of aggregate evidence might alter the

outcome of some or all of the charges . . . .' [Citation.]"
(*Westerfield, supra,* 6 Cal.5th at p. 689.)

### C. Analysis

Applying the above-stated principles, we conclude the trial court's denial of Valdez's motion to sever was not an abuse of discretion. It is true, as the parties agree, that the evidence of each crime was not cross-admissible. And Valdez does not appear to contend either of the charges was unusually likely to inflame the jury. We therefore focus on the factor upon which the trial court relied in denying the motion to sever – whether a weak case was joined with a strong one for spillover effect.

Valdez contends the court abused its discretion based on this spillover factor. The crux of Valdez's claim is that Marin's identification of him (as the perpetrator of the assault) was much weaker than Luviano and Burt's identification of him (as the perpetrator of the robbery). We are not persuaded. As the trial court pointed out, Valdez's face tattoo was highly distinctive and recognizable. The court appropriately balanced the potential for spillover against the statutory preference for joinder. The court was within its discretion to conclude that Marin's identification of Valdez was likely to be strong, and thus would not be unfairly bolstered by the evidence relating to the robbery.[8]

---

8    Additionally, as the Attorney General points out, much of Valdez's argument erroneously relies on testimony adduced at trial but not brought to the trial court's attention at the time of the motion to sever. (See *Merriman, supra,* 60 Cal.4th at pp. 37-38 ["An appellate court evaluates [ ] claims [that a trial court abused its discretion in denying a motion to sever] in light of the showings made and the facts known by the trial court at the time of the court's ruling. [Citations.]"].)

It also bears noting that Marin easily identified Valdez as the assailant at trial, not only based on his distinctive face tattoo, but also based on multiple prior encounters, including one the night before Valdez stabbed him. Luviano also recognized Valdez from prior encounters. For these reasons, we conclude the decision to try both offenses in a single trial did not prejudice Valdez nor result in gross unfairness or violate due process. (See *Merriman*, *supra*, 60 Cal.4th at p. 46 [even assuming the trial court's denial of a motion to sever is not an abuse of discretion, reversal may still be required if joinder resulted in gross unfairness in violation of due process].)

## II. The Trial Court Did Not Abuse its Discretion in Denying Valdez's *Romero* Motion

Valdez next argues the court abused its discretion in denying his *Romero* motion. Specifically, he argues the court erred by only considering recidivism without balancing other factors, resulting in a punishment that exceeded his culpability. For the reasons discussed below, we conclude the trial court's ruling was within the bounds of its discretion.

### A. Relevant Proceedings

Before sentencing, Valdez filed a motion to dismiss his prior strike and serious felony convictions pursuant to section 1385 and *Romero*. The prosecution opposed Valdez's motion.

In court, defense counsel argued although Valdez's prior convictions were serious felonies and strikes, neither offense was significantly violent in nature. She highlighted that one of the crimes involved taking a bicycle. The prosecution noted Valdez's 2014 assault conviction was recent. It also explained the time between Valdez's 2004 robbery and 2014 assault included a

11

lengthy prison term. The prosecution further emphasized that Valdez's prior convictions – a robbery and assault – were the exact same crimes he stood convicted of again.

The trial court declined to exercise its discretion under *Romero*, but struck Valdez's prior serious felony enhancements on count two. In denying *Romero* relief, the court emphasized that Valdez had a substantial history of reoffending and returning to custody once released. The court also noted the severity of the robbery prior had less to do with the object taken than the force used to take it.

### B. Applicable Legal Principles

A trial court must make its decision to strike or not strike a prior conviction by considering factors that are intrinsic to the Three Strike law's sentencing scheme. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).) The factors a trial court must consider include: (1) the nature and circumstances of the current conviction; (2) the nature and circumstances of the prior strike conviction; and (3) the defendant's "background, character, and prospects." (*Ibid.*) If the defendant falls outside the spirit of the Three Strikes law, the court may, in furtherance of justice, treat the defendant "as though he had not previously been convicted of one or more serious and/or violent felonies." (*Ibid.*; see also *Romero*, *supra*, 13 Cal.4th at pp. 529-530; § 1385, subd. (a).) We review a trial court's denial of a *Romero* motion for abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 374 (*Carmony*).) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Id.* at p. 377.)

Effective January 1, 2019, Senate Bill No. 1393 amended sections 667, subdivision (a) and 1385 to provide trial courts the

12

discretion to strike five-year prior serious felony enhancements. (*People v. Jones* (2019) 32 Cal.App.5th 267, 272.) We review a trial court's decision to strike or not strike prior serious felony enhancements for abuse of discretion. (*People v. Shaw* (2020) 56 Cal.App.5th 582, 586.)

### C. Analysis

We reject Valdez's contention that the trial court abused its discretion. The record does not suggest, as Valdez contends, that the court was unaware of or disregarded relevant mitigating factors in making its ruling. Rather, the record shows the court appropriately balanced the relevant factors. The court concluded, in light of Valdez's background, character, and prospects, that he fell within the spirit of the Three Strikes law based on the danger that he would recidivate. (See *Williams*, *supra*, 17 Cal.4th at p. 161.) The court also noted that it found unpersuasive defense counsel's contention that the nature of Valdez's prior robbery conviction was a mitigating factor because the object taken was a bicycle.

In addition to the trial court's stated reasons for denying the *Romero* motion, the record provides further support for the conclusion that the court's exercise of discretion was reasonable. As the prosecution pointed out, Valdez's prior strikes (robbery and assault) were the same offenses as his current offenses. This similarity supports the conclusion that the trial court's concerns about recidivism were warranted. Additionally, we note, as does the Attorney General, that one of Valdez's current offenses involved a violent and unprovoked stabbing, a fact the trial court could have reasonably relied on in denying the *Romero* motion.

To the extent Valdez suggests the trial court erred by not explicitly discussing every potentially relevant factor in denying

13

the *Romero* motion, we are not persuaded. "While a court must explain its reasons for striking a prior (§ 1385, subd. (a); see *Romero*, *supra*, 13 Cal.4th 497, 531), no similar requirement applies when a court declines to strike a prior [citation]." (*In re Large* (2007) 41 Cal.4th 538, 550.) "'The absence of such a requirement merely reflects the legislative presumption that a court acts properly whenever it sentences a defendant in accordance with the three strikes law.' [Citation.]" (*Ibid.*)

For these reasons, we conclude the denial of the *Romero* motion and the sentence ultimately imposed were not irrational or arbitrary. (*Carmony*, *supra*, 33 Cal.4th at pp. 376-377.) We therefore reject Valdez's argument that the trial court abused its discretion. (*Ibid.*)

### III. Valdez's Presentence Conduct Credits

Valdez lastly notes that the minute order of sentencing and abstract of judgment must be corrected to reflect his presentence conduct credits. The Attorney General agrees, and we agree with the parties.

At the sentencing hearing, the trial court awarded Valdez 281 actual days of presentence custody credit. The court also stated Valdez was entitled to 15 percent conduct credit under section 2933.1. The court did not indicate a specific number of days of conduct credit. The sentencing minute order and abstract of judgment likewise do not reflect an amount of conduct credit. It appears the trial court intended to give Valdez 42 days of conduct credit. (See § 2933.1, subd. (c) ["maximum credit that may be earned . . . shall not exceed 15 percent of the actual period of confinement."].)

The trial court is ordered to correct the sentencing hearing minute order and abstract of judgment to reflect the number of

days of conduct credit. (See *People v. Gabriel* (2010) 189 Cal.App.4th 1070, 1073 ["When there is a discrepancy between the minute order and the oral pronouncement of judgment, the oral pronouncement controls. [Citation.]"]; *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [courts may correct clerical errors any time, and appellate courts are authorized to order correction of an abstract of judgment that does not accurately reflect the sentence imposed orally by the trial court].)

## DISPOSITION

The trial court is ordered to correct the sentencing hearing minute order and abstract of judgment to reflect the conduct credits orally imposed. In all other respects, the judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, J.

We concur:

MANELLA, P.J.

WILLHITE, J.