HULL, Acting P. J.
*269 Defendant Cornelius L. Jones appeals from his conviction of attempted premeditated murder, assault with a deadly weapon, and assault likely to produce great bodily injury. He contends (1) the trial court erred by ruling the prosecution did not unconstitutionally excuse the sole potential African-American juror on the basis of race; (2) insufficient evidence supports the jury's finding he attempted to kill willfully, deliberately, and with premeditation; (3) the court imposed an unauthorized sentence; and (4) the court committed other sentencing and clerical errors.
The California Supreme Court directed us to vacate our earlier opinion in this matter and reconsider the cause in light of *724 Senate Bill No. 1393 (Stats. 2018, ch. 1013) (SB 1393). Thus, defendant also contends (5) we should remand to allow the trial court to exercise its new discretion under SB 1393 to strike two five-year enhancements imposed for a serious felony prior.
Except to remand to correct the sentencing and clerical errors, but not to reconsider the felony prior enhancements, we affirm the judgment.
FACTS
Daniel Petty was the bartender and closing manager at a bar in Sacramento. In the late night and early morning hours of August 17 and 18, 2013, Jovan Felix and a female companion came into the bar. Felix ordered a drink, but he did not like how Petty made it. Believing the drink could not be made differently, Petty offered to make a different drink or to pay for the drink he made. Felix wanted Petty to make the same drink over again. Petty asked a coworker, Scott Nguyen, to take care of Felix, and he went outside for a break.
Nguyen attempted to fix the drink for Felix, but Felix did not accept it. Nguyen offered to make a new drink, but Felix refused.
When Petty went outside, he sat with Joleen Esquivel, the bar's general manager. He told her what had happened. Then Felix came outside and was confrontational towards Petty. Esquivel introduced herself as the manager and *270 asked how they could resolve the matter. Felix said his drink was not made properly and the bartenders would not remake it. At one point, he said, "This is how places get burned down." He walked away with his companion, still angry.
After closing the bar, Petty, Nguyen, another employee named Angelo Stowers, and disc jockey Aaron Jacobson left the building together. Stowers saw a man walking back and forth suspiciously. He followed the man around the corner and saw him speak with Felix. Stowers turned around immediately and told the coworkers they needed to "leave ASAP."
Nguyen saw the two men and heard one of them asked the other, "Are these the guys?" The other said, "Yes." The coworkers began to walk away when one of the men, defendant, hit Nguyen in the head from behind. Both men went to the ground. Stowers pulled defendant off of Nguyen and slammed or dropped him on the ground. Jacobson kicked defendant near his head. Defendant stood up and brandished a knife.
Stowers ran across the street. Defendant chased him and said he would get him. As Stowers reached the curb, he tripped. He caught himself against a wall and stayed on his feet. He turned around, and defendant was almost on top of him with the knife. He grabbed defendant's wrist that held the knife as defendant tried to stab him. Stowers began to fall and defendant stabbed him in the abdomen. Stowers pulled out a knife from his back pocket and slashed defendant across the face.
Petty, from about 36 feet away, saw the man who was chasing Stowers push Stowers in the back, causing him to trip over the curb. Stowers hit the ground. The man jumped on top of him, but Stowers got to his feet. Stowers said, "Hey, stop trying to stab me." The man attacking Stowers made multiple stabbing motions with a knife in his hand. Stowers made a move with his hand and the man let out a pained growl. He held his cheek and ran away. The man and Felix met in the middle of the street and took off running together.
Petty, Nguyen, and Jacobson went to Stowers's aid. Jacobson called 911 and reported that defendant and Felix drove off *725 in a dark-colored GMC SUV. Nguyen discovered his tires had been slashed. Stowers underwent surgery for internal bleeding, during which he lost his pulse for about 45 seconds and was revived with CPR and medication. The surgery was successful, and the wound required several dozen staples.
Police located a gray GMC Yukon parked in front of defendant's residence. Jacobson identified defendant in a photo lineup, but Stowers could not.
*271 At some point after a police interview, defendant admitted he was at the scene of the crime.
The parties stipulated that a criminalist obtained a DNA sample from blood on the tip of Stowers's knife, and the DNA matched with defendant's DNA.
The parties also stipulated that a blood sample taken from Stowers at the hospital revealed a blood-alcohol level of approximately 0.14 percent, and a male weighing 232 pounds with a known alcohol concentration of 0.14 percent would have approximately eight to nine drink equivalents in his system at the time the sample was taken. A drink equivalent is one 12-ounce beer, one standard glass of wine, or one ounce of 80-proof alcohol.
Called by the defense, Stowers stated that after work the night of the stabbing, he had a complimentary drink while he and the others closed the bar. The drink was Wild Turkey 101, which was 101-proof alcohol, or 50.5 percent. The drink filled one-third of an eight-ounce glass. Stowers denied he was drunk that night.
VERDICT AND SENTENCE
A jury found defendant guilty of attempted murder which he committed willfully, deliberately, and with premeditation, assault with a deadly weapon, and assault by means of force likely to produce great bodily injury. (Pen. Code, §§ 664/187, subd. (a), 245, subd. (a)(1), (4); statutory section references that follow are to the Penal Code unless otherwise stated.) It also found true allegations that defendant personally inflicted great bodily injury in the attempted murder and the assault with a deadly weapon, and he personally used a dangerous and deadly weapon in the attempted murder. (§§ 12022.7, subd. (a), 12022, subd. (b)(1).)
In a bifurcated proceeding, defendant admitted a prior conviction for attempted voluntary manslaughter, and the trial court determined the conviction qualified as a serious felony and a prior strike. (§§ 667, subds. (a), (b)-(i), 1192.7, subd. (c), 1170.12.)
The court sentenced defendant to state prison for a term of 22 years plus a consecutive 14 years to life, calculated as follows: on the attempted murder, seven years to life, doubled for the prior strike, plus one year for the personal use enhancement, three years for the great bodily injury enhancement, and five years for the serious felony prior; and the upper term of four years on the assault with force likely to produce great bodily injury, doubled for the prior strike, plus five years for the serious felony prior. The court imposed and stayed sentence on the assault with a deadly weapon conviction pursuant to section 654.
*272 DISCUSSION
I-IV**
V
SB 1393
Prior to 2019, trial courts had no authority to strike a serious felony prior that is *726 used to impose a five-year enhancement under section 667, subdivision (a)(1). SB 1393 removed this prohibition. (Stats. 2018, ch. 1013, §§ 1, 2.) The legislation became effective January 1, 2019. ( Cal. Const., art. IV, § 8, subd. (c).)
Defendant contends SB 1393 applies to him because the statute is retroactive and applies to all cases not yet final as of its effective date, such as this case. He asks us to remand so the trial court may exercise its new discretion and consider striking the felony prior used to impose the five-year enhancement on count one, his conviction for attempted murder.
The Attorney General agrees SB 1393 is retroactive, but he argues we should not remand because the trial court's statements on the record clearly indicate it *273 would not in any event have stricken the prior when it originally sentenced defendant. We agree with the Attorney General.
Absent evidence to the contrary, amendments to statutes that reduce the punishment for a crime or vest in trial courts the discretion to impose a lesser penalty, such as SB 1393, apply to all defendants whose judgments are not final as of the amendment's effective date. ( In re Estrada (1965) 63 Cal.2d 740, 742, 48 Cal.Rptr. 172, 408 P.2d 948 ; People v. Garcia (2018) 28 Cal.App.5th 961, 972, 239 Cal.Rptr.3d 558.) When it enacted SB 1393, the Legislature did not indicate it intended the legislation to apply prospectively only. (Ibid .) The act thus applies retroactively to this case.
That finding is not the end of the matter. We are not required to remand to allow the court to exercise its discretion if "the record shows that the trial court clearly indicated when it originally sentenced the defendant that it would not in any event have stricken [the] ... enhancement" even if it had the discretion. ( People v. McDaniels (2018) 22 Cal.App.5th 420, 425, 231 Cal.Rptr.3d 443.)
The trial court need not have specifically stated at sentencing it would not strike the enhancement if it had the discretion to do so. Rather, we review the trial court's statements and sentencing decisions to infer what its intent would have been. (See People v. McVey (2018) 24 Cal.App.5th 405, 419, 233 Cal.Rptr.3d 915 [no remand where, "[i]n light of the trial court's express consideration of the factors in aggravation and mitigation, its pointed comments on the record, and its deliberate choice of the highest possible term for the firearm enhancement, there appears no possibility that, if the case were remanded, the trial court would exercise its discretion to strike the enhancement altogether"]; People v. Gutierrez (1996) 48 Cal.App.4th 1894, 1896, 56 Cal.Rptr.2d 529 [case not remanded for resentencing even though court did not expressly state it would not have stricken a strike prior but indicated in statements and rulings that it would not exercise any discretion to reduce the sentence, regardless of the particular enhancement at issue].)
Reviewing the evidence in the record, we conclude there is no possibility the trial court would strike the enhancement were we to remand. At sentencing, the court first denied defendant's motion for new trial. Independently reviewing the evidence, the court felt "very comfortable denying the motion for new trial [and] very comfortable with the verdict ... including that the defendant had adequate time to premeditate the attempted murder of Mr. Stowers." The evidence showed defendant "was doing his reconnaissance and essentially laying [sic ] in wait...."
Defendant's behavior after Stowers threw him down was "rage, and he did not like what Mr. Stowers had done unto him *727 and was going to make that clear under whatever circumstances that might be including, incredibly, chasing him out into oncoming traffic on J Street that night, dodging in and out of cars ... and then not giving up...." There was no question that after cornering Stowers, defendant stabbed him.
The court found defendant had "ample opportunities ... to reflect on how far was he going to take this when it came to Mr. Stowers. Well, you take it all the way. Incredibly. Senselessly. [¶] This whole case just shows the absurdity of what's deemed to be at times acceptable societal behavior over something as ridiculous as to the caliber of a Long Island Iced Tea drink. That's what brought us here today."
During sentencing, the prosecutor explained the facts of the felony prior. Defendant was convicted of attempted manslaughter for stabbing his ex-wife *274 numerous times. Defendant served 10 years in prison for that conviction and had been released only for a few months when he stabbed Stowers. Defendant did not know any of the individuals at the bar before he attacked.
Upon sentencing defendant, the court stated, "I've already, I guess, sort of spoken my sense of this case in my ruling on the new trial motion. This gives me obviously, as you know, great satisfaction in imposing the very lengthy sentence here today." The court noted that, notwithstanding defendant's genial conduct during court proceedings, his actions had displayed a "temper" that was "oftentimes triggered by drinking," along with "a [penchant] to use knives, apparently." The court stated defendant had "earned the sentence here today."
The court imposed a prison term of 14 years to life, plus a consecutive 22 years. On the conviction for assault likely to produce great bodily injury, the court imposed the upper term of four years, doubled for the prior strike. The court explained there was "no shortage" of aggravating factors that supported the upper term, but one factor "certainly to include [was] this case did involve planning and sophistication and there was violent conduct involved and the Defendant ... has served a prior prison term."
The assault count was the only count on which the court could have exercised leniency in sentencing, but it did not. It could have imposed terms of two, three, or four years. (§ 245, subd. (a)(4).) Yet, despite having already imposed a term of life with parole, the court imposed the upper term, knowing that when doubled, the term would add two additional years to defendant's sentence over what he would have served had the court imposed the mid term.
From this evidence, we conclude the trial court would not have dismissed defendant's prior serious felony even if it had discretion to do so. (See People v. McDaniels , supra , 22 Cal.App.5th at p. 425, 231 Cal.Rptr.3d 443 ; accord, People v. McVey , supra , 24 Cal.App.5th at p. 419, 233 Cal.Rptr.3d 915.)
Defendant contends we cannot know how the trial court would exercise its discretion on remand because trial counsel had no basis to argue in favor of striking the felony prior. He cites People v. Almanza (2018) 24 Cal.App.5th 1104, 1110-1111, 235 Cal.Rptr.3d 190, where the court stated, "[S]peculation about what a trial court might do on remand is not 'clearly indicated' by considering only the original sentence."
Our review of the record, however, goes beyond the original sentence. Besides not exercising its discretion for leniency when it could have, the trial court made clear its intention to impose the most stringent sentence *728 it could *275 justifiably impose. It stated there was no doubt the verdict was correct, defendant's actions were premeditated, dangerous, senseless and absurd, he attempted to kill Stowers only a few months after being released from prison where he had been for 10 years, and the court took "great satisfaction" in imposing the "very lengthy sentence" it imposed. Under these circumstances, we are confident the court would not strike the felony prior and its resulting enhancement out of leniency toward defendant. We will not remand the matter for resentencing on the enhancement imposed under section 667, subdivision (a)(1), on count one, the attempted murder conviction.
DISPOSITION
We remand the matter to direct the trial court to take only the following actions: (1) correct its minute order of November 20, 2014, to state the jury found the personal use of a dangerous weapon allegation as to count three to be not true; (2) strike the five-year prior serious felony enhancement imposed on count three under section 667, subdivision (a); (3) amend the abstract of judgment to describe count three as "assault likely to produce great bodily injury" and to state defendant's corrected sentence; and (4) forward the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.
We concur:
BUTZ, J.
MAURO, J.

See footnote *, ante .