Filed 5/18/22  P. v. Gillespie CA4/1
Opinion following transfer from Supreme Court

OPINION AFTER TRANSFER FROM CALIFORNIA SUPREME COURT

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE, | D069389 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD258034) |
| SAMUEL GILLESPIE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Kenneth Kai-Young So, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin Urbanski, and Brendon W. Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

In this gang-related case, an information jointly charged Samuel Gillespie and his codefendants Dominique Abdullah and Keshawn Price with certain felony offenses. Abdullah and Price pleaded guilty to shooting at an occupied vehicle (Pen. Code,[1] § 246) and admitted allegations that they each had suffered a serious felony prior and a strike prior.[2] A jury found Gillespie guilty of attempted murder (count 2, §§ 664 & 187, subd. (a)) and shooting at an occupied vehicle (count 3, § 246). The jury also found true the following allegations: the attempted murder was willful, deliberate, and premeditated within the meaning of section 189 (§ 664, subd. (a)); Gillespie was a principal in the commission of the attempted murder and at least one principal personally discharged a firearm during the commission of that offense (§ 12022.53, subds. (c) & (e)(2)); and Gillespie committed the crimes for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)(1) & (4)). Gillespie admitted allegations that he had suffered a prison prior, a serious felony prior, and a strike prior. After denying Gillespie's motion for a new trial, the court sentenced him to a total prison term of 25 years plus 30 years to life.

Gillespie appealed his convictions. In an opinion issued in May 2017, we affirmed the judgment. Gillespie petitioned our Supreme Court for review. The Supreme Court granted review and deferred the matter "pending consideration and disposition of a related issue in *People v. Mateo*, S232674 . . . , or pending further order of the court." In the meantime, our Legislature enacted Senate Bill No. 1437 (Senate Bill 1437), which "amend[s]

---

[1]    All further statutory references are to the Penal Code.

[2]    Abdullah and Price are not parties to this appeal.

the felony murder rule and the natural and probable consequences doctrine, as it relates to murder . . . ." (Stats. 2018, ch. 1015, § 1(f).)

Our Supreme Court remanded the matter to us with directions to vacate our decision and reconsider the cause in light of Senate Bill 1437. We received and considered supplemental briefing on the issue. Gillespie asserted that Senate Bill 1437 applied to attempted murder and that his attempted murder conviction must be reversed. He also argued that the matter must be remanded so the trial court may consider exercising its discretion under Senate Bill No. 620 (Senate Bill 620; Stats. 2017, ch. 682, § 1) and Senate Bill No. 1393 (Senate Bill 1393; Stats. 2018, ch. 1013, §§ 1-2), which allow a trial court to strike or dismiss firearm and prior serious felony enhancements.

The People conceded that the matter must be remanded in light of Senate Bill 620 and Senate Bill 1393 but argued that Gillespie's claim under Senate Bill 1437 was not properly before this court because the petition procedure in Senate Bill 1437 was the exclusive means for obtaining relief. We concluded that the impact of Senate Bill 1437 on Gillespie's conviction, including whether this statute applies to an attempted murder conviction, needed to be assessed by the trial court in the first instance. We vacated our original opinion issued in May 2017 and issued a revised opinion dated August 23, 2019, addressing Gillespie's arguments in newly added sections V and VI.

Gillespie again petitioned our Supreme Court for review. The Supreme Court granted review and deferred consideration of the matter. In February 2022, the Supreme Court transferred the matter back to this court with directions to vacate our decision and reconsider the cause in light of Senate Bill No. 775 (Senate Bill 775; Stats. 2021, ch. 551, § 2).

3

We requested supplemental briefing and invited Gillespie to raise any issues presented by recently enacted legislation. Gillespie and the People filed supplemental briefs agreeing that Senate Bill 775 requires the reversal of the attempted murder conviction because it cannot be based on the natural and probable consequences doctrine, and because the jury was prejudicially instructed on the elements of attempted murder. The parties also agree that the amendments to section 186.22 by Assembly Bill No. 333 (Assembly Bill 333) apply and require that the gang enhancements attached to counts 2 and 3 be reversed. Finally, Gillespie asserts that CALCRIM No. 601 does not correctly state the law on the elements of attempted murder with premeditation and that his enhancement for premeditation and deliberation must be reversed.

We agree that Gillespie's attempted murder conviction must be reversed, and the premeditation and gang enhancement allegations must be vacated.[3] We vacate our August 23, 2019, opinion and now reissue that opinion with revisions to address these issues.

FACTUAL BACKGROUND

In the early morning hours of August 16, 2014, the victim in this case, Curtis R., who was a member of the Lil Africa Piru criminal street gang, drove to the neighborhood of Imperial and 50th Street looking for a friend. After he parked and got out of his car, Curtis saw four people, wearing

---

[3] Because we reverse Gillespie's conviction for attempted murder, the true finding on the premeditation allegation attached to that count must be vacated as allegations attached to an underlying felony are not separate crimes and cannot stand alone. (*People v. Mustafaa* (1994) 22 Cal.App.4th 1305, 1311 (*Mustafaa*) [separating convictions from their attendant enhancements is unauthorized by law].) We therefore need not address Gillespie's contention that CALCRIM No. 601 does not correctly state the law.

hooded sweatshirts, hiding behind some cars and sneaking up on him. He believed the men were from a rival gang because he was in rival gang territory and he knew he was not supposed to be there. Curtis heard a gun being loaded. He quickly got back into his car and started backing up. As he did so, he heard gunshots and saw a man with a gun in his hand approaching his car. The man shot out his back window. Curtis managed to drive to a safe area where he called the police.

Numerous police officers were nearby when the shooting occurred. San Diego Police Department Officer Rogelio Medina and his partner, Officer Blake Williams, testified that they heard about 15 gunshots, first one and then a volley after a pause, from different caliber semiautomatic firearms. When Officers Medina and Williams looked in the direction of the gunfire, they saw four males wearing hooded sweatshirts run down an alley and then drive away in a white four-door Chevrolet sedan. The officers got back into their patrol car and pursued the men. Officer Medina used the radio to report a description of the Chevrolet and the direction it was traveling.

Officer Randy Burgess responded to the radio call and saw the Chevrolet slowly driving toward him. The car stopped in front of Officer Burgess's patrol car, the passenger door opened, and a man wearing dark clothing got out of the car and ran away. The driver also got out of the car and fled. Officer Burgess chased the men on foot. Shortly thereafter, Officers Medina and Williams located the Chevrolet by Officer Burgess's patrol car. Officer Medina stayed with the Chevrolet to secure it while Officer Williams assisted Officer Burgess in pursuing the males who had fled.

Inside the Chevrolet the police found Gillespie's red cellphone on the driver's seat and a red backpack on the front passenger's seat that contained a nine-millimeter semiautomatic handgun, a .22-caliber semiautomatic

handgun and Gillespie's automobile insurance card. Police found a red bandana between the two front seats and a pair of gloves on the front passenger floorboard. Police linked both semiautomatic handguns to two gang-related shootings. The Chevrolet was registered to Gillespie and Gillespie's prints were found on the trunk lid. A latent print examiner found no usable prints on the firearms.

After other police officers arrived at the abandoned Chevrolet, Officer Medina drove his patrol car toward a location where, according to a radio report, a suspect had been arrested. A resident flagged him down and informed him there was a firearm in his backyard. Officer Medina recovered a .45-caliber semiautomatic handgun from the swimming pool in the backyard.

Police found seven .45-caliber cartridge casings and three nine-millimeter cartridge casings at the shooting scene. The .45-caliber casings were fired from the .45-caliber handgun recovered from the pool and the nine-millimeter casings were fired from the nine-millimeter handgun inside the red backpack found in the Chevrolet.

Officer Kyle Okeson assisted in the search for the suspects and found Price, a Skyline gang member hiding near the scene. Price was wearing only black shoes, a black T-shirt and boxer shorts. DNA on a pair of jeans found by the police and on the gloves found in the Chevrolet matched Price's DNA, and Price was a possible major contributor to the DNA mixture found on the .45-caliber handgun. Police detected gunpowder residue on Price's hands.

Abdullah, a documented Skyline Piru gang member, was also arrested near the crime scene. He was wearing a black hooded sweatshirt and blue jeans. Surveillance video showed Gillespie running through a backyard with Abdullah. Police arrested Gillespie three days after the shooting. His social

6

media page contained a picture of the Chevrolet abandoned at the scene. During a search of Gillespie's bedroom, the police found the following items: a certificate of title signed by Gillespie releasing his interest in the Chevrolet; a box for the red cellphone that was found on the driver's seat of the Chevrolet; and numerous items of clothing that were red, one of the colors (along with black) of the Skyline gang.

The prosecution's gang expert opined that even though Gillespie had no law enforcement gang contacts prior to this incident, he was a Skyline gang member on the date of the shooting. The gang expert based her opinion on Gillespie's law enforcement history, field interviews and confidential informants, the terminology he used in text messages, his tattoos, and the color of his clothing. She also opined that Gillespie committed gang-related crimes for the benefit of the Skyline criminal street gang.

## DISCUSSION

## I. *DENIAL OF NEW TRIAL MOTION*

### A. *Background*

In November 2015, five months after he was convicted in June of that year, Gillespie filed a motion claiming he was entitled to a new trial under section 1181, subdivision (8) (section 1181(8)), on the ground he discovered new exculpatory evidence, material to his defense, that he could not have discovered and produced at trial through the exercise of reasonable diligence. As an exhibit to his motion, Gillespie attached a copy of an interview report prepared by Karen Gould, Gillespie's Alternate Public Defender investigator, which contained her notes concerning Abdullah's statements made to her from prison after Gillespie's trial. The report indicates that, according to Abdullah, Gillespie did not know a shooting was going to occur on the night of the incident because there had been no discussion in Gillespie's car about

7

who had a weapon as the car approached the scene at 50th Street, and Abdullah was certain that Gillespie did not have a weapon that night. Abdullah told Gould that he and a man named Jarius started shooting at a group of men in self-defense after the other group shot at them first. According to Abdullah, Gillespie ran to his car as soon as the shooting began and Gillespie and Price were already in the car when he and Jarius ran back to Gillespie's car. Abdullah claimed that Gillespie and Jarius, who had a backpack, were in the front and Price and Abdullah were in the back. Gillespie was angry with Jarius and told Jarius he had gotten them into the situation. Gillespie and the other three men drove away and then ran from the car after they saw a police car coming.

The court denied Gillespie's motion for a new trial, stating in part: "I don't believe this is . . . new evidence, as set forth in the Penal Code, which would support the granting of a new trial." The court also stated: "Quite honestly, I'm not sure that any of this evidence would have affected the verdict[,] given what I know about the state of the evidence, what the officers saw, and the other physical evidence that was out there." The court also found sufficient evidence supported the jury's verdicts.

B. *Applicable Legal Principles*

A trial court is statutorily authorized to grant a defendant's motion for a new trial in a criminal case "[w]hen new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial." (§ 1181(8).)[4] A motion for a new trial

---

4    Section 1181(8) provides in relevant part: "When a verdict has been rendered . . . against the defendant, the court may, upon his application, grant a new trial, in the following cases only: [¶] . . . [¶] 8. When new evidence is discovered material to the defendant, and which he could not, with reasonable diligence, have discovered and produced at the trial. When a

based on newly discovered evidence is viewed with disfavor, and denial of such a motion rarely will result in a reversal on appeal. (*People v. Fairchild* (1962) 209 Cal.App.2d 82, 84.)

In order to obtain a new trial under section 1181(8), the moving defendant must show (1) the evidence, and not simply its materiality, is newly discovered; (2) the evidence is not merely cumulative; (3) the defendant in the exercise of reasonable diligence could not have discovered and produced the evidence at trial; (4) the newly discovered evidence is of such strength that a result more favorable to the defendant is probable if the new evidence is admitted on retrial; and (5) these facts are shown by the best evidence of which the case admits. (*People v. Howard* (2010) 51 Cal.4th 15, 42-43; 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Judgment, §§ 103 & 105, pp. 144-146.) The trial court may consider the credibility of the evidence in determining whether introduction of the proffered evidence in a new trial would render a more favorable result reasonably probable. (*Howard*, at p. 43.) A trial court's denial of a motion for a new trial will not be disturbed on appeal unless a manifest and unmistakable abuse of discretion is clearly shown. (*People v. Delgado* (1993) 5 Cal.4th 312, 328.)

C. *Analysis*

Gillespie contends that Abdullah's statements to Gould following his conviction qualify as newly discovered evidence. He asserts the trial court prejudicially abused its discretion in denying his new trial motion because

motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as, under all circumstances of the case, may seem reasonable."

this new evidence, if admitted on retrial, would result in a more favorable outcome. For purposes of analysis we shall assume, without deciding, that Abdullah's statements to Gould which Gould summarized in her report,[5] is newly discovered, that it is material and not merely cumulative, and that Gillespie in the exercise of reasonable diligence could not have discovered and produced the evidence at his trial.

Having made these assumptions and, after considering the credibility of Abdullah's proffered statements, we cannot conclude that if Abdullah were to testify at a new trial in a manner consistent with Gould's notes concerning those statements, his testimony would be of such persuasive strength that it is reasonably probable Gillespie would obtain a more favorable outcome. The record shows that when Abdullah pleaded guilty to shooting at an occupied vehicle he also admitted allegations that he had suffered a prior serious felony conviction and a prior strike conviction. The prosecution would be entitled to use Abdullah's prior felony record to attack his credibility if he were to testify on Gillespie's behalf during a retrial. (Evid. Code, § 788; *People v. Howard*, *supra*, 51 Cal.4th at p. 43 [court may consider credibility of proffered evidence in determining whether its admission in a new trial would render a more favorable result reasonably probable].)

---

[5] Gillespie did not submit an affidavit signed by Abdullah, the witness Gillespie expects will testify at a retrial in this matter, as required by section 1181(8). As noted, he attached to his new trial motion a copy of Gould's interview report containing her notes concerning statements Abdullah made to her. The prosecution did not challenge Gillespie's failure to comply with the statutory affidavit requirement. At the hearing on Gillespie's motion for a new trial, the prosecutor told the court, "Your Honor, I don't think that there is any newly discovered evidence in this particular case. *With regard to* [*whether*] *it's an affidavit or not, I didn't contest that in my* [*opposition*] *papers.* [*T*]*he People would prefer to go forward at this time with the state of the attached statement*." (Italics added.)

In addition, several of Abdullah's statements to Gould were inconsistent with credible eyewitness testimony at Gillespie's trial. For example, Abdullah indicated that Gillespie and Price ran back to Gillespie's car without him and Jarius as soon as the first shot was fired. However, Officers Medina and Williams testified that, when they looked in the direction of the gunfire, they saw *four* males run down an alley and then drive away in a Chevrolet sedan.

In another proffered statement, Abdullah claimed that only he and Jarius shot at the other group at the scene. However, the prosecution's forensic evidence showed that gunpowder residue was detected on Price's hands and not on Abdullah's hands. The record shows Price made a statement against penal interest to Gould that he was armed with a .45-caliber handgun and fired it during the incident. (Evid. Code, § 1230.) In addition, the prosecution's forensic evidence showed that Price was a possible major contributor to the DNA mixture found on the .45-caliber handgun recovered from a swimming pool after the shooting.

In another proffered statement, Abdullah claimed that the backpack found on the front passenger seat of the Chevrolet after the shooting, which contained two semiautomatic handguns, belonged to Jarius. However, Officer David Ramirez testified that he found Gillespie's insurance card inside the backpack.

For all of the foregoing reasons, we conclude there is little, if any, chance that Gillespie would obtain a more favorable result if Abdullah were to testify at a new trial in a manner consistent with Gould's notes concerning the statements he made to her.

Accordingly, we conclude the court acted well within its broad discretion when it denied Gillespie's motion for a new trial.

11

## II. *GILLESPIE'S ATTEMPTED MURDER CONVICTION AND ATTACHED PREMEDITATION ALLEGATION MUST BE REVERSED*

### A. *Senate Bills 1437 and 775*

"Our law recognizes two forms of liability for aiders and abettors. [Citation.] First, under direct aiding and abetting principles, an accomplice is guilty of an offense perpetrated by another if the accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' [Citation.] [¶] Second, under the natural and probable consequences doctrine, an accomplice is guilty not only of the offense he or she directly aided or abetted (i.e., the target offense), but also of any other offense committed by the direct perpetrator that was the 'natural and probable consequence' of the crime the accomplice aided and abetted (i.e., the nontarget offense)." (*People v. Gentile* (2020) 10 Cal.5th 830, 843 (*Gentile*).)

Senate Bill 1437 amended section 188 to provide in subdivision (a)(3) that, except as provided in section 189, subdivision (e), which governs felony murder, "in order to be convicted of murder, a principal in a crime *shall act with malice aforethought*. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Gentile, supra,* 10 Cal.5th at p. 846.) As amended, section 188, subdivision (a)(3), also "bars a conviction for first or second degree murder under a natural and probable consequences theory." (*Ibid.*) The bill also "added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief. . . ." (*Id.* at p. 843.)

In our August 2019 opinion, we concluded that any relief under Senate Bill 1437 had to be considered in the first instance by the sentencing court pursuant to the procedures provided in section 1170.95. Likewise, our

12

Supreme Court held in *Gentile*, *supra*, 10 Cal.5th 830, that "[t]he ameliorative provisions of Senate Bill 1437 do not apply on direct appeal to nonfinal convictions obtained before the law became effective.  Such convictions may be challenged on Senate Bill 1437 grounds only through a petition filed in the sentencing court under section 1170.95." (*Id.* at pp. 851-852.)

Effective January 1, 2022, Senate Bill 775 amended section 1170.95 by adding subdivision (g) to the statute.  This subdivision provides the following: "A person convicted of murder, attempted murder, or manslaughter whose conviction is not final may challenge on direct appeal the validity of that conviction based on the changes made to Sections 188 and 189 by Senate Bill 1437 (Chapter 1015 of the Statutes of 2018)."  By expressly authorizing a defendant whose judgment of conviction is nonfinal to seek relief under Senate Bill 1437 on direct appeal, Senate Bill 775 has abrogated *Gentile*.

B. *Analysis*

Attempted murder requires "the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Booker* (2011) 51 Cal.4th 141, 177-178 (*Booker*).)  "[U]nlike murder, attempted murder is not divided into degrees.  The prosecution, though, can seek a special finding that the attempted murder was willful, deliberate, and premeditated, for purposes of a sentencing enhancement." (*People v. Mejia* (2012) 211 Cal.App.4th 586, 605; see *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1049 ["attempted murder is not a lesser included offense of attempted premeditated murder, but premeditation constitutes a penalty provision that prescribes an increase in punishment"].)  If committed with premeditation and deliberation, attempted murder is punishable by a life term, i.e., seven years to life in prison.  (§§ 664, subd. (a); 3046, subd. (a).)

Here, the trial court instructed the jury that it could find Gillespie guilty of attempted murder (CALCRIM No. 600) as a direct aider and abettor (CALCRIM Nos. 400, 401, or as an aider and abettor under the natural and probable consequences doctrine. (CALCRIM No. 402). The prosecution argued Gillespie's guilt for attempted murder under: (1) the natural and probable consequences doctrine as an aider and abettor to the target offense of shooting at an occupied vehicle; and (2) as a direct aider and abettor to murder.

Regarding guilt for attempted murder under the natural and probable consequences doctrine, the prosecutor told the jury that Gillespie could be held accountable for this crime even if he did not know his accomplice would commit murder. On the direct aiding and abetting theory, the prosecutor told the jury that similar to conspiracy, an intent to kill was required. The jury did not return a verdict on count 1, conspiracy to commit murder. But it found Gillespie guilty of attempted murder (count 2). It also found true the attached allegation that the attempted murder was willful, deliberate, and premeditated.

The parties agree, and we concur, that in light of Senate Bills 1437 and 775, the natural and probable consequences doctrine is no longer a valid theory of liability for attempted murder. (*People v. Sanchez* (2022) 75 Cal.App.5th 191, 196.) Thus, the trial court instructed on what is now a legally invalid theory. (*Ibid.*) Gillespie also correctly notes that the trial court instructed the jury regarding direct aiding and abetting with an incorrectly modified version of CALCRIM No. 600 that told the jury, in part, it could find Gillespie guilty of attempted murder if he "or a person he aided and abetted intended to kill that person." (Compare, Jud. Council of Cal., Crim. Jury Insts. (2021) CALCRIM No. 600.) This instruction allowed the

jury to find Gillespie guilty of attempted murder without finding that he acted with the required intent to kill. (*Booker*, *supra*, 51 Cal.4th at p. 177.) Thus, the instructions presented the jury with two possible routes to a guilty verdict on the attempted murder charge, and both instructions allowed the jury to find Gillespie guilty based on incorrect elements of the offense. Under these circumstances, Gillespie's attempted murder conviction must be reversed because the jury necessarily convicted him on a legally invalid basis. Reversal of the attempted murder conviction requires that we vacate the true finding on the premeditation allegation attached to this count. (*Mustafaa*, *supra*, 22 Cal.App.4th at p. 1311.) On remand, the prosecution should be given the opportunity to retry Gillespie on the attempted murder charge and attached premeditation allegation. (*People v. Shirley* (1982) 31 Cal.3d 18, 71 [retrial permitted where posttrial change in law invalidates certain evidence because prosecution proved its "case under the law as it then stood" having "had little or no reason to produce other evidence of guilt."].)[6]

### III. *ASSEMBLY BILL 333 REQUIRES REVERSAL OF THE TRUE FINDINGS ON THE CRIMINAL STREET GANG ENHANCEMENTS*

A. *Assembly Bill 333 Amendments to Section 186.22*

Effective January 1, 2022, Assembly Bill 333 "amends section 186.22 to require proof of additional elements to establish a gang enhancement." (*People v. Lopez* (2021) 73 Cal.App.5th 327, 343 (*Lopez*).) When appellants

---

[6] Gillespie previously argued that: (1) the premeditation finding attached to his attempted murder conviction must be stricken under *People v. Chiu* (2014) 59 Cal.4th 155 (superseded by statute as stated in *Gentile*, *supra*, 10 Cal.5th at p. 849); (2) his sentence of 25 years plus 30 years to constituted cruel or unusual punishment; and (3) the disparity in his sentence and the 15 year determinate sentences being served by his more culpable codefendants violated his rights to due process and equal protection. These arguments have now been rendered moot.

15

were tried, former section 186.22 defined a " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f), italics added.) Assembly Bill 333 narrowed the definition to "an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.) This change requires that the People "prove that two or more gang members committed each predicate offense." (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1072; accord, *Lopez*, at pp. 344-345.)

Under the former version of section 186.22, the phrase "pattern of criminal gang activity" was defined as "the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of [specified] offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, by two or more *persons*." (Former § 186.22, subd. (e), italics added.)

Assembly Bill 333 changed this definition. Now, the predicate offenses must have been committed by two or more "members" of the gang (as opposed to any persons) and must have "*commonly* benefited a criminal street gang" and "the common benefit of the offense [must be] more than reputational. (§ 186.22, subd. (e)(1), italics added.) Additionally, at least one of these predicate offenses must occur after the effective date of this chapter, and the last of those offenses must have occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed. (*Ibid.*) The currently charged offense no longer counts

16

as a predicate offense.  (§ 186.22, subd. (e)(2).)  The new law also reduced the number of qualifying offenses that can be used to establish a pattern of criminal gang activity, removing vandalism, looting and several fraud-related offenses from the list.  (§ 186.22, subd. (e)(1)(A)-(Z).)

Assembly Bill 333 requires the prosecution to prove the benefit the gang derives from the current offenses is "more than reputational."  (Stats. 2021, ch. 699, § 3 [enacting § 186.22, subd. (g)].)  "Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant."  (§ 186.22, subd. (g).)  Finally, Assembly Bill 333 added section 1109 requiring bifurcation of gang enhancements charged under section 186.22, subdivision (b) or (d) to be tried separately from the underlying charges upon request from the defense.  (Stats. 2021, ch. 699, § 5.)  The defendant's guilt on the underlying offense must first be determined, and a trial on the gang enhancement is held if the defendant is first found guilty of the underlying offense.  (§ 1109, subds. (a)(1) & (a)(2).)

B.  *Analysis*

Gillespie argues, and the People concede that amended section 186.22 applies to this matter.  We agree.  (*Lopez, supra*, 73 Cal.App.5th at p. 344.)

Appellants have a constitutional right to a jury trial on "every essential element" of the crimes and enhancements charged against them "no matter how compelling the evidence may be against [them]."  (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 71.)  Here, Assembly Bill 333 added elements to section 186.22, subdivision (a) that the factfinders at Gillespie's trial were not required to find.  "When jury instructions are deficient for omitting an element of an offense, they implicate the defendant's federal constitutional

17

rights, and we review for harmless error under the strict standard of *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (*Chapman*)." (*People v. Sek* (2022) 74 Cal.App.5th 657, 668 (*Sek*); *People v. E.H.* (2022) 75 Cal.App.5th 467, 479 [same].) "Under the *Chapman* standard, reversal is required unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (*Sek*, at p. 668.)

Gillespie asserts, and the People concede, that the true findings on the gang allegations attached to counts 1 and 2 must be reversed because the jury was not instructed on the new definition of a criminal street gang, and the new requirement that the benefit to the gang must be more than reputational. We agree. We also note that the jury was not instructed with the new requirement that at least one predicate offense must occur after the effective date of this chapter (§ 186.22, subd. (e)(1)), nor could the People have presented evidence on this new element. In addition, the jury was not instructed that the predicate offenses must provide a common benefit to the gang that is more than reputational. (§ 186.22, subd. (e)(1).) Finally, the prosecution's gang expert presented no evidence that the two predicate offenses commonly benefitted Skyline or that the benefit was more than reputational. We cannot conclude that the failure to require proof of these additional elements under amended section 186.22, or instruct on these elements, was harmless beyond a reasonable doubt.

Accordingly, the gang enhancement allegations attached to counts 2 and 3 must be reversed. " 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it

18

read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial.' " (*Sek, supra*, 74 Cal.App.5th at p. 669.)[7]

### IV. *RELIEF UNDER SENATE BILLS 620 AND 1393*

"Before January 1, 2018, section 12022.53 prohibited courts from striking its enhancements. Former subdivision (h) of section 12022.53 provided: 'Notwithstanding Section 1385 or any other provision of law, the court shall not strike an allegation under this section or a finding bringing a person within the provisions of this section.' (Stats. 1997, ch. 503, § 3, p. 3137.) Thus, if a section 12022.53 enhancement was alleged and found true, its imposition was mandatory. [Citations.] In 2017, the Legislature enacted Senate Bill No. 620 . . . , amending section 12022.53(h) to remove this prohibition. (Stats. 2017, ch. 682, § 2.) Section 12022.53(h) now provides that a 'court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.' " (*People v. Tirado* (2022) 12 Cal.5th 688, 695-696.)

The jury found true a vicarious firearm enhancement under section 12022.53, subdivision (c) and (e)(1). At sentencing in 2015, Gillespie received a consecutive 20-year sentence for the enhancement. This firearm enhancement was alleged only with respect to the attempted murder count and therefore must be vacated based on the reversal of the attempted murder conviction. (*Mustafaa, supra*, 22 Cal.App.4th at p. 1311.) Should the People elect to retry Gillespie for attempted murder with the attached firearm enhancement, and he is again found guilty of attempted murder and a true

---

7    On remand, should the People decide to retry this matter, Gillespie can ask the trial court to bifurcate the gang enhancement allegations under section 1109.

19

finding is made on the firearm enhancement, Gillespie is entitled to be sentenced under Senate Bill 620.

Gillespie admitted that he had a prior serious felony conviction. He received a consecutive five-year term pursuant to section 667, subdivision (a)(1) for the prior serious felony conviction. At the time of Gillespie's sentencing, courts were prohibited from striking serious felony enhancements under section 667, subdivision (a)(1). (*People v. Jones* (2019) 32 Cal.App.5th 267, 272.) Effective January 1, 2019, however, Senate Bill 1393 removed that prohibition, permitting trial courts to dismiss serious felony enhancements in furtherance of justice. (*People v. Stamps* (2020) 9 Cal.5th 685, 693.) On remand, Gillespie is entitled to resentencing to allow the trial court to exercise its discretion to strike the prior serious felony conviction enhancement under amended sections 667, subdivision (a) and 1385, subdivision (b).

DISPOSITION

Gillespie's conviction for attempted murder is reversed and the true finding on the attached premeditation allegation is vacated. The gang enhancement allegations attached to counts 2 and 3 are vacated. The matter is remanded to the trial court for further proceedings. The People shall have 60 days from the date of the remittitur in which to file an election to retry Gillespie (1) on a legally viable theory of attempted murder and (2) under the new law as amended by Assembly Bill 333. If the People elect not to retry him, the trial court shall modify the judgment as directed and shall resentence him in accordance with the views expressed herein. In all other respects, the judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


IRION, J.


DATO, J.

21