Filed 7/20/23  P. v. Reitzell CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, <br><br>     Plaintiff and Respondent, <br><br> v. <br><br> MARJORIE REITZELL, <br><br>     Defendant and Appellant. | A163806 <br><br> (San Mateo County <br> Super. Ct. No. SC081182A) |

In 2015, Marjorie Reitzell was convicted of multiple offenses while driving intoxicated, including two murders.  (Pen. Code § 187, subd. (a); statutory references are to this code unless otherwise indicated.)  The trial court imposed an aggregate sentence of 30 years to life.  In October 2021, the court held a hearing to reconsider Reitzell's sentence due to a discrepancy in the abstract of judgment.  At that hearing, the court ordered that sentence enhancements for causing bodily injury or death to multiple victims would be stayed instead of running concurrently, and otherwise reaffirmed its original sentencing decision.

In this appeal from the resentencing order, Reitzell seeks a remand for the court to reconsider her sentence in light of an ameliorative amendment to section 654 that went into effect in 2022.  Although Reitzell is entitled to the benefit of that amendment, the record shows unequivocally that the court

1

would not exercise its new discretion to reduce Reitzell's sentence. Accordingly, we affirm the October 2021 resentencing order.

## BACKGROUND

### I. The 2013 Incident

In October 2013, Reitzell was arrested at the scene of a traffic collision in Menlo Park. Responding officers found two pedestrians lying dead in the road, and a group of teenagers who reported that Reitzell's car jumped over a center median and hit their car. Reitzell was found in her car, where it had struck a tree. She had a bottle of brandy in a paper bag, appeared to be intoxicated, and admitted that she hit another car. Reitzell was transported to a hospital where her blood alcohol level was determined to be 0.23 percent.

Investigators determined that a few hours prior to the Menlo Park collision, Reitzell had collided with another vehicle when the driver slowed for a traffic light. A friend of Reitzell's also reported seeing her drink half a bottle of wine earlier that day. When interviewed by police, Reitzell stated that prior to the collision in Menlo Park, she had been involved in a minor collision in the parking lot of a store where she purchased alcohol. She continued to drive, and drank a bottle of brandy while driving home, then decided to pull over because of poor vision and because she needed to use the bathroom. Reitzell recalled seeing bright lights before hitting a tree. She claimed not to remember hitting pedestrians or another car.

### II. Reitzell's Convictions and Original Sentence

In 2014, Reitzell was charged with the following offenses: two counts of murder, with enhancements for intentional and personal infliction of great bodily injury (§§ 187, subd. (a) & 1203.075, subd. (a)(1)); two counts of vehicular manslaughter while driving intoxicated, with enhancements for causing great bodily injury (§§ 191.5, subd. (a) & 1192.7, subd. (c)(8); Veh.

Code § 23152); one count of driving under the influence and causing injury to multiple victims (Veh. Code, §§ 23153, subd. (a) & 23558); and one count of driving with a blood alcohol content of 0.08 or more and causing bodily injury to more than one victim (Veh. Code, §§ 23153, subd. (b) & 23558). The information also alleged a prior conviction for driving under the influence (DUI) that occurred within 10 years of the charged offenses. (Veh. Code, §§ 23540 & 23152, subd. (a).)

On May 20, 2015, a jury convicted Reitzell of all charges. On July 8, the court held a hearing to address posttrial motions and announce sentence. The court denied multiple defense motions, including a motion for new trial, a motion to find defendant guilty of the lesser charge of involuntary manslaughter, and a motion to set aside one of the murder verdicts. Turning to sentencing, the court stated that it had considered the parties' briefs, and the probation report, and it had also sat through trial, and then invited argument.

The defense argued that the court should impose a sentence of 15 years to life in order to satisfy the requirements of section 654. Defense counsel reasoned that all offenses arose out of a single transaction and therefore the court was required to impose the longest sentence, which was 15 years to life for one of the section 187 convictions. The prosecutor argued the court should impose an aggregate sentence of 30 years to life, pursuant to authority establishing that multiple punishment is permissible under section 654 when a single act of violence injures or kills multiple victims. (*People v. Murray* (1990) 225 Cal.App.3d 734, 749 (*Murray*); *People v. Gutierrez* (1987) 189 Cal.App.3d 596, 602, fn. 4.)

The prosecutor also argued that several other factors justified imposing consecutive sentences for the murders, including Reitzell's "very extensive

3

criminal history," the fact that she was on probation for driving under the influence when she committed her current offenses, and her "absolute lack of remorse."

The court prefaced its sentencing decision with the following statement: "This was a tragic and entirely avoidable act done by, in my opinion, someone who demonstrates no respect for the law nor appreciates the dangerousness of her conduct. This was murder." The court found that Reitzell acted "wantonly, recklessly and with malice aforethought," and that she drank so much that "she had no idea that she mowed down two innocent people." The court also concluded Reitzell lacked remorse and was "almost too cavalier" about the lives she ruined. As support for this finding, the court relied on Reitzell's trial testimony, when she was untruthful about the amount of alcohol she had consumed and "insult[ed] the intelligence of the jury" by "concoct[ing] a story" that a dog ran in the street.

In pronouncing Reitzell's sentence, the court stated that it was choosing to impose consecutive sentences for the two murder convictions, listing multiple reasons: the multiple victim exception to section 654; the crimes involved great violence and callousness; Reitzell had numerous prior DUI convictions outside the statutory period; she was on probation for a DUI when she committed the current offenses; she had seven prior felony convictions and 12 misdemeanor convictions; and she displayed little insight into her conduct. Accordingly, Reitzell was sentenced to consecutive sentences of 15 years to life for the two murder convictions (counts 1 & 2).

For the two gross vehicular manslaughter convictions (counts 3 & 4), the court imposed an upper term of 10 years, which it stayed pursuant to section 654. Similarly, the court imposed an upper term sentence of three years for driving with a blood alcohol content of 0.08 or more and causing

4

bodily injury to more than one victim (count 6), which it stayed under section 654.

Reitzel's count 5 conviction for driving under the influence causing injury was based on her collision with a car after jumping the median. The court imposed an aggravated three-year term, and three one-year enhancements, which corresponded to three passengers who were injured. The court ordered these terms to run concurrently with Reitzel's 30-year-to-life sentence for the murders.

## III.  The Resentencing Hearing

In 2018 and 2019, the California Department of Corrections and Rehabilitation (CDCR) sent letters to the sentencing court and district attorney, inquiring whether there were errors or discrepancies in the abstract of judgment pertaining to Reitzell's determinate sentences. On October 1, 2021, the court held a hearing to consider the matter. The court determined that enhancements pertaining to Reitzell's count 5 conviction for driving under the influence and causing injury should have been stayed rather than ordered to be concurrent. In ordering this change to be made, the court expressed its view that "this is just, to me, an abstract issue," which did not affect the court's "goal" to impose an aggregate sentence of 30 years to life for Reitzell's offenses.

At the October 2021 hearing, defense counsel asked the court to reconsider other aspects of Reitzel's sentence and requested the opportunity to explore whether Reitzel's behavior in prison might warrant a reduction of her sentence. The court denied these requests, explaining that it remembered this case "extremely well," and it had taken great care when making its sentencing choices. The court also recalled that it could actually have sentenced Reitzell to a longer sentence.

5

At the resentencing hearing, the parties disagreed about whether the court had discretion to reduce Reitzell's sentence based on her prison conduct. The court found it unnecessary to decide whether it had the power to reconsider other aspects of Reitzel's sentence because it would choose not to. In this regard, the court stated: "I would not re-sentence her. I'm not certain that I have the power, but I would simply say I'm not re-sentencing her. And if I had the power to re-sentence her, I would not re-sentence her." When defense counsel alluded to the need to make a record, the court responded: ". . . And using all the discretion that I have, I would deny the re-sentencing and because it wouldn't result in anything different, in my opinion. Looking at everything in the best light, she deserves this; she killed a family."

## DISCUSSION

The sole issue raised on appeal is whether this matter should be remanded for another sentencing hearing due to the fact that section 654 was amended while this appeal was pending.

When the resentencing hearing was held in October 2021, section 654, subdivision (a) provided that when a defendant commits an act punishable by two or more provisions of the law, she must be punished under the provision calling for the longest possible term. (Stats. 1997, ch. 410, § 1.) This subdivision was amended in January 2022, so that it now provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Under the amended statute a court is no longer required to impose the longest possible term of imprisonment when multiple offenses are based on the same act or omission. (*People v. Mani* (2022) 74 Cal.App.5th 343, 379 (*Mani*).)

6

The amendment to section 654 applies retroactively to defendants whose cases are not yet final. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673; *Mani, supra*, 74 Cal.App.5th at p. 379.) Thus the People concede, and we agree, that the current version of section 654 applies in Reitzell's case due to the pendency of this appeal. However, we also agree with the People that a remand is not required under the circumstances presented here.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. [Citations.] Defendants are entitled to 'sentencing decisions made in the exercise of the "informed discretion" of the sentencing court,' and a court that is unaware of its discretionary authority cannot exercise its informed discretion." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228.) By the same reasoning, when an ameliorative amendment gives a sentencing court new discretion, a remand will often be required, as the trial court could not have been aware of that discretion when sentence was originally announced. (See e.g. *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425 (*McDaniels*).)

However, "if ' "the record shows that the trial court would not have exercised its discretion even if it believed it could do so, then remand would be an idle act and is not required." ' " (*McDaniels, supra*, 22 Cal.App.5th at p. 425; see also *People v. Jones* (2019) 32 Cal.App.5th 267, 272–273; *People v. McVey* (2018) 24 Cal.App.5th 405, 418; *People v. Gutierrez* (1996) 48 Cal.App.4th 1894, 1896.) This is such a case. When the trial court announced Reitzell's sentence, it made clear its intention to impose consecutive 15-year-to-life sentences for the two murders, despite having discretion to impose concurrent sentences. Moreover, at the resentencing

hearing, the court was adamant that it would not change this sentencing decision, even if it had discretion to do so.

Reitzell argues the trial court should not be taken at its word, offering three reasons. First, she contends that when the court stated it would not consider reducing Reitzell's sentence it did not actually have the power under section 654 to punish Reitzell for vehicular manslaughter instead of murder, nor did defense counsel have the opportunity to argue for this result. (Citing *People v. Johnson* (2019) 32 Cal.App.5th 26.) But these circumstances will always be present when an ameliorative amendment is applied retroactively, which is why remand is the general rule. However, the facts of this case warrant applying an exception to this general rule, as we have explained, because the trial court unequivocally stated that it would not use any discretion it might have to reduce the 30-year-to-life sentence.

Next, Reitzell argues that the trial was not sufficiently "vehement" about its intention to impose a 30-year-to-life sentence. The record is to the contrary. The trial court could not have been more clear in expressing its "goal" to hold Reitzell accountable for two murders by imposing consecutive sentences for those crimes, as it was authorized to do under the multiple victim exception to section 654. (*Murray*, *supra*, 225 Cal.App.3d at p. 749.)

Finally, Reitzell points out that the trial court stated that it was not giving Reitzell the most stringent sentence it could impose. She fails to explain how this circumstance works in her favor. The record shows that the reason the court noted that it could have applied a longer sentence was to reinforce the fact that it made a conscious choice to impose concurrent 15-year-to-life terms for the murders. Because the court clearly conveyed that it would not exercise any discretion it might have to reduce Reitzell's sentence, a remand for resentencing is not required.

8

# DISPOSITION

The judgment and sentence are affirmed.


                                        TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
RODRÍGUEZ, J.


*People v. Reitzell* (A163806)

9