Filed 6/8/22  P. v. Davie CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B308500 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA480713) |
| v. | |
| TODD DAVIE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deborah S. Brazil, Sam Ohta, and Henry J. Hall, Judges.  Affirmed in part, reversed in part, and remanded with instructions.

Law Offices of Jason Szydlik and Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

---

## INTRODUCTION

A jury convicted appellant Todd Davie of assault with force likely to produce great bodily injury, and the trial court sentenced him to 16 years in prison, which included the high term for the offense, a prior strike, and various enhancements. As described more fully below, during the proceedings against him, appellant made numerous motions for self-representation under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta* motions) and substitution of counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden* motions). Judge Deborah S. Brazil initially granted appellant's *Faretta* motion, but at his next hearing, appellant gave up his pro per status. Appellant later moved for self-representation again before a different judge, Judge Sam Ohta, but refused to cooperate with the court's attempts to ensure that he was knowingly and voluntarily waiving his right to counsel. Judge Ohta therefore denied his motion. As relevant here, Judge Henry J. Hall, who also presided over appellant's trial and sentenced him, denied appellant's fifth *Marsden* motion after finding that defense counsel was not rendering ineffective assistance.

2

On appeal, appellant challenges the denial of his second *Faretta* motion, arguing that Judge Brazil's grant of his first motion established that his waiver of his right to counsel before Judge Ohta was knowing and voluntary. He also challenges the denial of his fifth *Marsden* motion, claiming that an irreconcilable conflict existed between him and his counsel because he had made violent threats against her and refused to cooperate with her for some time thereafter. In a supplemental brief filed under our District's Miscellaneous Order 2022-01, appellant asserts he is entitled to resentencing in light of legislation that became effective during the pendency of this appeal: (1) Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 695) (AB 124), and (2) Senate Bill No. 567 (2021-2022 Reg. Sess.; Stats. 2021, ch. 731) (SB 567).[1]

As discussed below, we find no error in the denial of appellant's *Faretta* and *Marsden* motions. Appellant's refusal to cooperate with Judge Ohta's inquiries after making his second *Faretta* motion prevented the court from determining whether appellant truly wanted to represent himself, and whether his waiver of his right to counsel was knowing and voluntary; his prior waiver before Judge Brazil

---

[1]    As relevant here, AB 124 made the low-term sentence for an offense presumptively appropriate if the court finds that the defendant's prior trauma contributed to the commission of the offense. SB 567 requires that aggravating circumstances supporting a high-term sentence be stipulated to or found beyond a reasonable doubt by the factfinder.

did not fill that gap. The court therefore did not err in denying appellant's *Faretta* motion. Nor did the court abuse its discretion in denying appellant's *Marsden* motion, as neither appellant's threats nor his unilateral refusal to cooperate with counsel created an irreconcilable conflict warranting substitution of counsel. However, we agree with appellant that AB 124 requires his resentencing.[2]

## BACKGROUND

### A. The Offense and Trial

In 2019, the Los Angeles County District Attorney's office charged appellant with assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4).)[3] It was further alleged that appellant personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). Finally, it was alleged that appellant had a prior serious felony (§§ 667, subd. (a)(1) & 1192.7, subd. (c)(8)) and a prior strike (§§ 667, subd. (d) & 1170.12, subd. (b)), both premised on his 2004 conviction for criminal threats. As

---

[2] Given our conclusion, we need not decide whether SB 567 independently requires appellant's resentencing. On remand, the trial court shall consider all retroactive amendments to sentencing law, as applicable to appellant.

The parties agree that the abstract of judgment includes two clerical errors. Because we remand for resentencing and instruct the trial court to prepare a new abstract of judgment, we need not address them.

[3] Undesignated statutory references are to the Penal Code.

described below, during the ensuing proceedings, appellant made numerous unsuccessful *Faretta* and *Marsden* motions.

At trial, the People presented evidence that following an altercation with a fellow train passenger, appellant suddenly attacked the passenger, repeatedly punching him. According to the evidence, appellant's attack left the victim with multiple facial fractures requiring surgery and the placement of a metal plate on the lower part of his face. The People also elicited testimony that appellant was much taller and heavier than the victim.

The defense presented evidence that the victim's bicycle had bumped against appellant, and that the victim had yelled at him during their subsequent argument. It claimed appellant had acted in self-defense, or that he and the victim had engaged in mutual combat.

### B. The Jury's Verdict and the Trial Court's Sentence

Following trial, the jury found appellant guilty as charged. It further found the great bodily injury allegation to be true. In a bifurcated trial, the jury found that appellant had previously been convicted of making criminal threats (§ 422).

The trial court then sentenced appellant to a total of 16 years in prison: the upper term of four years for the assault, doubled to eight years for the prior strike; three years for the great bodily injury enhancement; and five years for the prior serious felony enhancement. In selecting the upper term,

5

the court relied on two aggravating circumstances, finding that they outweighed "by a substantial amount," "any factors in mitigation [appellant] may have." First, it pointed to the vulnerability of the victim, stating that he "was a much smaller man than [appellant]" and that he was attacked "out of the blue with an extremely violent attack." Second, the court noted that appellant had a long history of violent conduct, citing appellant's probation report and rap sheet, and noting his conduct before the court.[4] The court additionally stated that it had reviewed a prior appellate decision regarding appellant, which reflected that he had been found not guilty by reason of insanity on "10 felony counts of battery on a correctional officer and 10 counts of misdemeanor battery." It further noted that a psychological profile cited in the prior appellate decision indicated that appellant had "a severe history of physical and verbal assaultive behavior, having caused serious physical injury to others."[5] Appellant timely appealed.

## DISCUSSION

Appellant claims the trial court violated his right to self-representation by denying his *Faretta* motion and

---

[4] As noted below, early in the proceedings, appellant made violent threats against his counsel and invoked those threats as a ground for counsel's substitution.

[5] The court did not consider appellant's prior conviction for criminal threats as an aggravating fact, as it was already reflected in his prior strike.

6

violated his right to counsel by denying his fifth *Marsden* motion. In his supplemental brief, he contends he is entitled to resentencing under newly enacted legislation. As explained below, we find no error in the denial of appellant's *Faretta* and *Marsden* motions. However, we agree that AB 124 applies retroactively to appellant's judgment and requires his resentencing.

### A. *The Trial Court Did Not Err in Denying Appellant's* Faretta *Motion*

#### 1. *Background*

On September 16, 2019, before his preliminary hearing, appellant moved for self-representation. The court (Judge Brazil) provided him with the Los Angeles County Superior Court's standard *Faretta* advisement and waiver form, but appellant refused to fill it out.[6] The court proceeded to orally advise appellant of the charges against him, his rights, and the risks and disadvantages of self-representation, asking appellant to confirm his understanding of the court's explanations. As particularly

---

[6] "The Los Angeles County Superior Court's in propria persona advisement form (sometimes referred to as a *Faretta* form) serves as 'a means by which the judge and the defendant seeking self-representation may have a meaningful dialogue concerning the dangers and responsibilities of self-representation.'" (*People v. Blair* (2005) 36 Cal.4th 686, 709, disapproved on another ground in *People v. Rices* (2017) 4 Cal.5th 49, 76.)

7

relevant here, the court advised appellant that while in custody, he would have limited access to phones "or any other preparations" and that "[a]ccess to [a] law library while in custody is limited." Appellant refused to answer some of the court's questions, claiming to "raise the Fifth," but generally confirmed his understanding of the court's warnings, including those regarding his limited access to a law library. Following this colloquy with appellant, the court found that he was knowingly and voluntarily waiving his right to counsel, granted his *Faretta* motion, and relieved his appointed counsel. Appellant then represented himself at the preliminary hearing.

However, at the next hearing, an arraignment on September 30, 2019, appellant asked that counsel be reappointed, listing, among other complaints, that he had had difficulty accessing the law library. Counsel was reappointed.

On December 2, 2019, at a hearing before Judge Ohta, appellant again moved to represent himself. When asked to fill out the court's *Faretta* form, appellant again refused, stating he "shouldn't have to qualify for [his] rights." The court explained that it was required to ensure appellant was waiving his right to counsel knowingly and voluntarily, and that this was the form's purpose, but appellant persisted in his refusal, noting that he had already represented himself at the preliminary hearing. After additional unfruitful attempts to persuade appellant to fill out the form, the court

8

told him he could reconsider his refusal during the noon recess.

After the noon recess, appellant informed the court that he had torn up the form and flushed it down the toilet. He reiterated that he was not going to fill it out. The court indicated it was going to ask appellant a few questions, to which appellant replied, "I don't want no questions asked of me." In response to the court's continued attempts to question him, appellant asserted that he had the right to remain silent and did not have to prove anything. After extensive additional attempts to question appellant were unsuccessful, the court denied appellant's *Faretta* motion. The court explained that appellant's refusal to fill out the *Faretta* form and to answer the court's questions prevented it from determining whether appellant was knowingly waiving his right to counsel. It further noted that appellant had relinquished his prior pro per status, suggesting that he was susceptible to a change of mind.

## 2. *Principles*

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel (*Iowa v. Tovar* (2004) 541 U.S. 77, 80-81), as well as the right to self-representation (*Faretta v. California, supra*, 422 U.S. at 807). Among the two corresponding rights, the right to counsel -- which "secures the protection of many other constitutional rights as well" (*People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*)) -- is preeminent, in the sense that

it is self-executing and persists unless affirmatively waived, whereas the right to self-representation must be unequivocally asserted to take effect (*id*. at 20-21).

When a defendant asks to waive the right to counsel, the trial court must "determine whether the defendant truly desires to represent himself or herself." (*Marshall*, *supra*, 15 Cal.4th at 23.) "[C]ourts must draw every inference against supposing that the defendant wishes to waive the right to counsel," and "[a] motion for self-representation made in passing anger or frustration . . . may be denied." (*Ibid*.) Moreover, the court must make the defendant aware of the risks of self-representation and "satisfy itself that the waiver is knowing and voluntary" (*People v. Lawley* (2002) 27 Cal.4th 102, 140 (*Lawley*)), meaning that the defendant "understands the significance and consequences of the decision and makes it without coercion" (*id*. at 139). We review de novo whether a defendant knowingly and voluntarily invoked the right to self-representation and waived the right to counsel. (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

### 3. *Analysis*

In light of appellant's refusal to demonstrate that he was waiving his right to counsel knowingly and voluntarily, the trial court did not err in denying appellant's *Faretta* motion. Appellant had already obtained pro per status two and a half months before, only to relinquish that status at the very next hearing. Although Judge Brazil warned

appellant before granting his request that his access to a law library would be limited, and appellant signaled that he understood that risk, he requested the reappointment of counsel just two weeks later because he had had difficulty accessing the library. This course of events suggested appellant did not truly appreciate the risks and limitations of self-representation. At the hearing before Judge Ohta, after again requesting self-representation, appellant refused to fill out the court's *Faretta* form (instead tearing it up and flushing it down the toilet), claiming he "shouldn't have to qualify for [his] rights." When Judge Ohta attempted to question appellant orally, appellant persistently refused to answer the court's questions, insisting that he had the right to remain silent and did not have to prove anything.

Appellant's adamant refusal to cooperate with the court's inquiry prevented it from determining whether appellant genuinely desired to represent himself or whether his waiver of the right to counsel was made with full awareness of the dangers and disadvantages of self-representation. Under these circumstances, the court properly denied appellant's motion. (See *Marshall*, *supra*, 15 Cal.4th at 23; *Lawley*, *supra*, 27 Cal.4th at 140; *United States v. Hausa* (2d Cir. 2019) 922 F.3d 129, 135 ["[the defendant] prevented the court from assessing his purported waiver by refusing to answer any questions meant to assess his understanding of the risks of self-representation"]; *United States v. Krug* (8th Cir. 2016) 822 F.3d 994, 1000 [where defendant refused to answer district court's questions

11

after seeking self-representation, "the district court was unable to determine that [his] attempted waiver of his right to counsel was knowing and voluntary, and therefore did not err in denying [his] motion to proceed pro se"].)

Appellant argues, "Without evidence to the contrary, [Judge Ohta] had to presume that [Judge Brazil] properly found on September 16, 2019, that appellant had knowingly, intelligently, and voluntarily waived his right to appointed counsel." In support, he cites Evidence Code section 664, which establishes a presumption that an "official duty has been regularly performed." (*Ibid.*) The question, however, is not whether Judge Brazil properly granted appellant's prior *Faretta* motion based on the record before her, but whether the record before Judge Ohta demonstrated that appellant's alleged waiver was knowing and voluntary. As noted, the record showed that notwithstanding appellant's prior assurances to Judge Brazil that he understood the perils of self-representation, after encountering a difficulty of which he had been warned, appellant backtracked and sought reappointment of counsel. Judge Ohta thus properly sought assurances that appellant understood the consequences of self-representation and that he was not acting out of momentary frustration. Appellant's cantankerous conduct in response left the court no choice but to deny his motion.

## B. The Trial Court Did Not Abuse Its Discretion in Denying Appellant's Fifth Marsden *Motion*

### 1. *Background*

Appellant made numerous *Marsden* motions before and during his trial. At the hearings on these motions, appellant made various complaints against his counsel and expressed general distrust of her. Among other things, he complained that counsel was not properly following up on leads he was providing her. In particular, he asserted that video footage of the incident on the train was readily available, but that counsel was inexplicably failing to obtain it. In response, counsel detailed her efforts to follow up on the information appellant provided and her investigation generally. She explained, repeatedly, that she had attempted to obtain footage of the incident, but had learned that the incident was not recorded. Following each hearing, the trial court found that counsel had performed competently, and that there was no cause for substitution of counsel.

On January 29, 2020, following his fourth *Marsden* motion, appellant made threatening remarks toward his counsel and stated, "There's a conflict right there." The court (Judge Hall) ordered appellant removed from the courtroom. On February 28, 2020, appellant mentioned having threatened to slap his counsel and asserted that was a conflict of interest. The court responded that it would not allow appellant to "generate [his] own conflict of interest by threatening physical danger." After appellant interjected,

13

"We'll see what happens in trial," the court replied that it was going to order appellant shackled.

At a subsequent hearing, when appellant refused to enter the courtroom, the court stated, "I think one of the reasons that [appellant is] refusing to come out is I instructed the bailiff that I was not going to have him assault [his counsel] . . . . I'll take the steps necessary to make sure that doesn't happen." His counsel noted appellant was not assisting her.

On July 15, 2020, appellant made his fifth *Marsden* motion, which is at issue in this appeal. This motion followed the pattern described above. At the hearing on the motion, appellant complained, inter alia, that his counsel was relying on the People's assertion that there was no video of the incident and was not doing what he had asked her to do. In response, counsel detailed her diligent investigative efforts, including her investigator's attempt to locate video footage of the incident, but reiterated that no video existed. Finding no ineffective assistance of counsel, the court denied appellant's motion.

### 2. *Principles*

A criminal defendant has no absolute right to substitute appointed counsel. (*People v. Gutierrez* (2009) 45 Cal.4th 789, 803.) "When a defendant seeks substitution of appointed counsel . . . 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is

14

entitled to relief if the record clearly shows [1] that the appointed counsel is not providing adequate representation or [2] that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.'" (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).)

Generally, to establish an irreconcilable conflict, the defendant must point to actions by the attorney that led to a breakdown of the relationship. (See *People v. Smith* (2003) 30 Cal.4th 581, 606 [upholding denial of *Marsden* motion where "[d]efendant did not show that defense counsel did anything to cause any breakdown in their relationship"].) A defendant's assertion of lack of trust in the attorney does not constitute an irreconcilable conflict. (See *People v. Myles* (2012) 53 Cal.4th 1181, 1207 (*Myles*) ["'If a defendant's claimed lack of trust in, or inability to get along with, an appointed attorney were sufficient to compel appointment of substitute counsel, defendants effectively would have a veto power over any appointment, and by a process of elimination could obtain appointment of their preferred attorneys, which is certainly not the law'"].) Similarly, "[a] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith* (1993) 6 Cal.4th 684, 696.) We review a trial court's denial of a *Marsden* motion for abuse of discretion. (*Taylor*, *supra*, 48 Cal.4th at 599.)

15

### 3. *Analysis*

The trial court did not abuse its discretion in denying appellant's fifth *Marsden* motion. Appellant does not contend that his trial counsel rendered ineffective assistance. He claims only that he and counsel became embroiled in an irreconcilable conflict. Yet even in that respect, appellant identifies no conduct by his counsel contributing to a breakdown of the relationship. Rather, appellant points to: (1) his own threat of violence against counsel, which he mentioned to the court on February 28, 2020, and (2) his lack of cooperation with counsel for some time thereafter. He contends it was clear that he lacked confidence in his counsel.

A *Marsden* motion, however, is not a vehicle for a defendant to unilaterally jettison his or her appointed counsel. As the court found, appellant's threats were part of his attempt to "generate [his] own conflict," evidenced by his repeated argument that his threats created a conflict.[7] Appellant points to no evidence that his counsel became unable to represent him zealously as a result of his conduct. His behavior, while reprehensible, did not require

---

[7] Appellant contends the court perceived his threat as genuine, given its statement that it was going to order him shackled and its subsequent assurance that it would take the steps necessary to ensure he would not carry it out. The court's response showed only that it took any threat against counsel seriously, regardless of the appellant's obvious use of the threat to attempt to have her removed.

16

substitution of counsel.  (See *People v. Smith*, *supra*, 6 Cal.4th at 696; *People v. Horton* (1995) 11 Cal.4th 1068, 1106 [defendant's lawsuit against appointed counsel does not require disqualification unless circumstances demonstrate actual conflict of interest; "[a] contrary holding would enable an indigent criminal defendant to challenge each successive appointment of counsel, delaying indefinitely the criminal prosecution"]; cf. *People v. Johnson* (2018) 6 Cal.5th 541, 579 [defendant's physical attack of his counsel and threats against counsel's family created no conflict where trial court credited counsel's assurance that his representation of defendant would not be impaired]; *People v. Roldan* (2005) 35 Cal.4th 646, 676 [defendant's attempt to disrupt and delay trial by threatening to kill his appointed counsel did not create conflict of interest for counsel], disapproved on another ground by *People v. Doolin* (2009) 45 Cal.4th 390.)

Nor did appellant's refusal to cooperate with his counsel require the court to grant his motion.  (See *People v. Smith*, *supra*, 6 Cal.4th at 696; *People v. Michaels* (2002) 28 Cal.4th 486, 523 [defendant cannot compel substitution of counsel by refusing to cooperate].)  Finally, appellant's bare claim that he lacked confidence in his attorney does not establish an irreconcilable conflict.  (See *Myles*, *supra*, 53 Cal.4th at 1207.)  Accordingly, we find no abuse of discretion in the trial court's denial of his *Marsden* motion.

17

### *C. Appellant Must be Resentenced in Accordance with Intervening Legislation*

We agree with appellant that AB 124 requires resentencing. The Governor signed AB 124 while this appeal was pending, and it became effective January 1, 2022. (Stats. 2021, ch. 695, § 5.3.) This enactment made a low-term sentence presumptively appropriate under specified circumstances, including where the defendant's experience of physical trauma was a contributing factor to the defendant's commission of the offense.[8] (§ 1170, subd. (b)(6)(A); Stats. 2021, ch. 695, § 5.3.) Where the presumption applies, the court may impose a higher sentence if it finds "the aggravating circumstances outweigh the mitigating circumstances [so] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) As the Attorney General concedes, AB 124 applies retroactively to judgments that, like appellant's, were not final when they became effective. (See *People v. Garcia* (2022) 76 Cal.App.5th 887, 901 [changes effected by AB 124 apply retroactively to nonfinal appeals, under rule of *In re Estrada* (1965) 63 Cal.2d 740].)

At the time of appellant's sentencing, the trial court had no statutory reason to make, and appellant had no

---

[8]  Other specified circumstances include the defendant's youth, experience of intimate partner violence or human trafficking, and other forms of prior trauma. (§ 1170, subd. (b)(6)(A)-(C).)

18

reason to seek, a finding that past physical trauma was a contributing factor to appellant's commission of the offense. On appeal, appellant points to evidence that he was shot in a drive-by shooting when he was 20 years old, and that as a result, he later suffered from nightmares and flashbacks, and continued to suffer from constant backpain that required him to use a walker. These circumstances could conceivably support a finding that appellant's prior trauma played a role in his commission of the offense, thereby triggering the presumption that a low-term sentence is appropriate. We must therefore remand the matter so the trial court may resentence appellant in accordance with AB 124's requirements.

The Attorney General argues that remand for consideration of AB 124 is unnecessary, contending that the record clearly indicates the trial court would not have selected a low-term sentence even under AB 124's presumption. (See, e.g., *People v. Jones* (2019) 32 Cal.App.5th 267, 273 [remand unnecessary where record clearly indicated trial court would not have exercised newly granted discretion to strike enhancement].) In support, the Attorney General notes the court's finding, in imposing the high term, that aggravating circumstances -- appellant's history of violence and the circumstances of his offenses -- outweighed mitigating ones. According to the Attorney General, this finding would have overcome AB 124's presumption, and demonstrates the court would have

19

imposed the same sentence even had it applied AB 124. We are unpersuaded.

The record reflects no finding by the trial court that appellant's prior trauma contributed to the commission of his offense, and similarly reflects no specific consideration of appellant's past trauma as a mitigating circumstance. AB 124 places this factor, along with certain others, at the forefront. This legislative emphasis, together with the presumption in favor of the low term, could have affected the court's exercise of its discretion. (Cf. *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [where trial courts imposed presumptive sentences of life without parole for certain juvenile offenders, despite having discretion to impose lesser sentences, removal of presumption affected scope of courts' discretion, requiring remand; "we cannot say with confidence what sentence [the courts] would have imposed absent the presumption"].) Moreover, even if the court had been disinclined to impose a low-term sentence, AB 124's new presumption might have persuaded it to impose a mid-term sentence, instead of the high-term sentence it selected. Without speculating, we merely conclude that on this record, it cannot be said remand for resentencing under AB 124 would be futile. On remand, the trial court should consider whether appellant's prior trauma contributed to his commission of the offense and resentence him in accordance with AB 124's instructions.

## DISPOSITION

The convictions are affirmed.  The sentence is reversed, and the matter is remanded for resentencing consistent with intervening ameliorative changes to sentencing law. Following resentencing, the trial court shall issue a new abstract of judgment and forward it to the California Department of Corrections and Rehabilitation.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

MANELLA, P. J.

We concur:

WILLHITE, J.

CURREY, J.

21